[No. 20556. In Bank. — June 13, 1890.]

IN RE PROCEEDINGS FOR DISBARMENT OF MOSES G. COBB.

DISBARMENT OF ATTORNEY — INSUFFICIENT PROOF. — The evidence reviewed, and held insufficient to warrant disbarment or suspension of an attorney who has practiced law more than forty years without previous stain upon his professional reputation.

PROCEEDINGS for the disbarment of Moses G. Cobb, an attorney at law, upon the accusation of Andrew Crawford.

The facts are stated in the opinion of the court.

*Warren Olney*, and *Giles H. Gray*, for Relator.

*Joseph McKinley*, and *John F. Burris*, for Respondent.

McFARLAND, J.— On June 3, 1889, Andrew Crawford filed in this court a written accusation against Moses G. Cobb, charging him with violating his oath as attorney at law, and praying that this court " take such action in the premises as may be just and proper." Cobb filed a demurrer to the accusation, on the ground that it does not state sufficient facts to constitute an accusation or complaint. He also filed an answer; and before any ruling on the demurrer, with the consent of the parties, a referee was appointed to take and report the evidence, and his report has been filed.

The accusation was not sufficient. It states substantially these facts: Cobb, as attorney for one Schallard, commenced an action against the Eel River Steam and Navigation Company, to foreclose two mortgages on the steamer Ferndale. Judgment was entered for plaintiff in the superior court for $13,015.50, in November, 1882. Defendant appealed the case, and judgment was affirmed in the appellate court on July 15, 1886. In the mean time, the relator herein, Crawford, had obtained another

mortgage on the Ferndale, and being desirous of buying the steamer, or at least having it sold when it would bring the most, and saving himself from loss, he made an arrangement with Cobb that the sale of the steamer should be delayed until a more favorable time for sale, and that he should pay Cobb certain moneys, which should be applied on the sale if Crawford should become purchaser of the steamer, and should be returned by Cobb to Crawford in case the latter should not become such purchaser. Under this contract, Crawford gave Cobb moneys and obligations, from time to time, until the aggregate thereof amounted to over five thousand dollars. Afterward the steamer was sold under execution. At the sale, Cobb bid in the steamer at seventeen thousand five hundred dollars, but immediately afterward made an agreement with Crawford to let the latter have the steamer for sixteen thousand five hundred dollars, the amount which Crawford had bid at the sale. "Thereafter the plaintiff in said action (Schallard) came from his residence at Humboldt to the city and county of San Francisco, and discharged said Cobb as his attorney, and refused to let your relator (Crawford) have said steamer for the sum of sixteen thousand five hundred dollars, and repudiated the authority of said Cobb to make any arrangement for the sale of said steamer, or of the sheriff's certificate of sale." It is then averred, upon information and belief, that Schallard demanded of Cobb the money and obligations received by the latter from Crawford, and that Cobb refused and neglected to pay the same. It is further averred that Cobb did not pay said moneys to the plaintiff, or to "your relator, or to any person for him, except as next hereinafter stated, to wit, on May 24, 1888, and after demand made as aforesaid, the said Schallard assigned his claim against the said Cobb, growing out of said payments received by said Cobb, to your relator, and afterward, and on the sixth day of May, 1889, the said Cobb settled with your relator and received a receipt in full of all demands on the part of your relator."

It is clear that if Schallard repudiated Cobb's contract with Crawford, and discharged Cobb as attorney, and Cobb settled with Crawford, then there is no case here against Cobb.

But if we ignore, as far as possible, the question of the sufficiency of the accusation, and look into the evidence, we fail to see that the grave charges made against the respondent have been sustained with sufficient degree of certainty. The averments of the accusation, above referred to, must still be taken as true. Schallard, as before stated, discharged Cobb as his attorney, and repudiated all contracts which the latter had made with Crawford; and it does not appear that any explicit demand was ever made by Schallard, or for him, that Cobb should pay Schallard any sum of money claimed to have been collected by Cobb as attorney for Schallard. Cobb swears that there never was such a demand, and the evidence on the point for the relator is, that the attorney for Schallard *and* the attorney for Crawford made together a demand on Cobb; but it does not appear whether they claimed the money as due to Schallard or to Crawford. (It is to be noticed that the demand was subsequently coupled with a threat of proceedings for disbarment.) And indeed Schallard was not in a very sure position to demand money received on a contract which he had repudiated. Crawford had a claim against the steamer, in quite a large sum of money for repairs done on it. Cobb had an unsatisfied claim for attorney's fees for prosecuting the original suit in this court. He testified, also, that all Schallard wanted was the amount in money of his judgment, and that he, Cobb, had the privilege of making all the steamer would sell for over that amount. As Schallard repudiated the contract between Crawford and Cobb, the latter had strong reasons for thinking that whatever liability he was under was to Crawford, with whom he never had the relation of attorney and client. The sheriff's certificate was in Cobb's name.

Crawford claimed the right to purchase the steamer under the contract with Cobb, and was in possession of it. Under these circumstances, an arrangment was made by which Cobb, with Crawford's consent, assigned the certificate of sale to Schallard's agent; Schallard paid a certain amount of money to Crawford, and assigned to the latter whatever demands he might have against Cobb, although this last assignment, Cobb testifies, was without his knowledge. Schallard got ownership and possession of the steamer, which was worth more than his judgment, and Cobb settled with Crawford.

While the conduct of the respondent in the premises may be subject to some adverse criticism, we do not think that the case made out is strong enough to warrant us in disbarring or suspending an old attorney who has practiced law more than forty years without any previous stain upon his professional reputation.

The accusation is dismissed, without costs to either party.

PATERSON, J., Fox, J., and SHARPSTEIN, J., concurred.

WORKS, J., concurring.—I concur in the judgment, on the ground that the accusation is insufficient. I do not concur in the finding that the evidence fails to show any ground for the disbarment or suspension of the respondent from the practice. It is clearly shown that he received money from Crawford which he failed to pay over or account for to either his client or Crawford. The money did not belong to the respondent. Whether it belonged to his client or to Crawford was wholly immaterial, as each of them demanded its payment, and he admitted his liability and agreed to pay the account when he could raise it. It thus appears that he had received this money as an attorney, and converted it to his own use. This was a plain and palpable violation of his duty as an attorney, which, in my judgment, this court should not palliate or excuse.