## In re JOHNSON.

Pol. Code, § 938, provides that the state's attorney shall not receive any fee from any prosecutor for services in any prosecution or business to which it shall be his official duty to attend, nor be concerned as attorney for either party other than for the state or county in any civil action depending on some state of facts upon which the criminal prosecution commenced but undetermined shall depend. An Attorney General during the pendency of a prosecution for grand larceny of horses commenced an action in favor of the owners of such horses against defendant in the criminal proceeding to recover damages as for a conversion of the horses, but withdrew from the ciivl case before trial and judgment, and received no compensation for his services therein, and testified that, when he commenced the civil action, it was his opinion that the only question involved therein would be the amount of damages by plaintiff, and that evidence tending to prove the larceny would not be necessary. **Held,** that such Attorney General was not subject to disbarment as an attorney as for a violation of such statute.

Laws 1907, c. 200, § 1, provides that, whenever any complaint is laid before a justice of the peace that a criminal offense has been committed, such justice shall issue subpoena requiring all persons to attend before him at a time and place named to submit to examination concerning the offense charged. It appeared that it was the uniform practice of an Attorney General, whenever a complaint was made before him of the commission of a crime, to cause an examination to be had under this statute, the proceedings in each case being entitled, "The State of South Dakota v. John Doe," a subpoena being issued for the appearance of the alleged offender. After examination of a person accused of having obtained money under false pretenses, the prosecuting witness sought to employ the Attorney General to bring a civil action to recover the money, but the latter declined to bring the action, and referred the prosecutor to an attorney occupying the same office with the Attorney General and receiving a monthly salary from him, and prosecutor employed such attorney and the civil action was brought by him. No criminal prosecution resulted from the examination, and the Attorney General took no part in the prosecution of the civil action, and received no compensation therefrom. **Held,** that the Attorney General was not subject to disbarment as for misconduct, in the absence of evidence of improper motives on his part in the conduct of such matter.

Laws 1907, c. 200, §1, providing that, whenever a complaint is laid before a justice of the peace, police justice, or municipal judge that a criminal offense has been committed, after investigation of the same, such justice or judge shall issue subpoenas requiring any and all persons to attend before him at a time and place mentioned, and to submit to an examination concerning the violation of the law

alleged, cannot be resorted to to obtain evidence for use in a civil suit growing out of a transaction constituting a criminal offense.

(Opinion filed May 20, 1911.)

Proceedings for the disbarment of Royal C. Johnson as an attorney at law. Dismissed upon the merits.

*Thomas H. Null,* for the State. *Gaffy, Stephens & Fuller,* for respondent.

CORSON, J. On the 28th of March, 1911, J. M. Prostrollo, filed in this court an accusation against the said Royal C. Johnson, charging him with misconduct as an attorney of this court, to which the accused filed an answer on April 4, 1911. In view of the important position held by the accused as Attorney General of this state, and the necessity for an early determination of the proceedings, this court decided to hear the case in order to avoid the delay incident to a reference of the case to a referee, and appointed the 21st day of April, A. D. 1911, as the time for such hearing.

The accusation, omitting the title, is as follows: "J. M. Prostrollo, being duly sworn, on oath says: That at all the times hereinafter mentioned Royal C. Johnson was the duly elected, acting, and qualified states attorney in and for Hyde county, S. D., and a member of the bar of the Supreme Court of South Dakota. That said Royal C. Johnson is a member of the law firm of O'Brien & Johnson at Highmore, S. D. That on or about June 22, 1909, said Royal C. Johnson instituted proceedings in justice court against Frank Brandell, Fred Cline, and George McCarthy, charging them with the crime of grand larceny committed in Hyde county, S. D., by the stealing of certain horses. That said criminal proceedings were prosecuted to final judgment of conviction in the circuit court of Hyde county at the October, 1909, term thereof; said criminal proceedings being now before the Supreme Court on appeal. That on or about the 22d day of June, 1909, said Royal C. Johnson, as a member of said firm of O'Brien & Johnson, commenced civil actions against said Frank Brandell, Fred Cline, George McCarthy, and one Charley Bowman to recover damages for the unlawful conversion of the said horses. That the

alleged larceny and the alleged conversion were one and the same transaction, and said civil actions depended on the same state of facts as said criminal action depended on. That said O'Brien & Johnson prosecuted said civil actions until about April 20, 1910, when they filed written withdrawals therefrom. That on or about July 10, 1910, said Royal C. Johnson, as state's attorney aforesaid, caused a subpœna to be served on affiant in an action entitled state of South Dakota v. John Doe, by which affiant was required to attend before W. B. Hamlin, a justice of the peace, in said county. That, when affiant appeared before said justice, he was sworn as a witness, and thereupon Royal C. Johnson proceeded to examine affiant as a witness. That such examination was confined to an inquiry concerning a certain transaction between affiant and one Ringer. That by said examination it was disclosed that affiant had entered into a contract with said Ringer, by which affiant sold said Ringer a relinquishment to a certain tract of land situate in Hughes county, S. D., and agreed to secure a filing on said land for said Ringer. That said Ringer agreed to pay affiant $200 for said relinquishment and for securing such filing. That the filing was made on said land by said Ringer and the $200 was paid over to affiant. That at the time of said negotiations and transactions there was no filing on the land, and affiant did not have a relinquishment thereto, but said land was government land. That, after giving such testimony, no further proceedings were had in said case of State v. John Doe. That thereafter, and about the month of August, 1910, a suit was begun in the circuit court of Hyde county against this affiant by said Ringer to recover said $200. That said civil suit was conducted on behalf of the plaintiff by one T. Forest Auldridge. That said O'Brien & Johnson and said T. Forest Auldridge office together, and, as affiant is informed and believes, said T. Forest Auldridge is in the employ of said O'Brien & Johnson. Affiant alleges that the criminal proceeding in justice court in said case of State of South Dakota v. John Doe was a mere pretense, and was had for the sole purpose of putting affiant on the witness stand and securing from affiant an admission that said land was government land, and that affiant did not have a relinquishment for the same. That, as affiant is in-

formed and believes, the said justice of the peace, at the request of said Johnson, made no record of said case against John Doe. Wherefore affiant prays that the several matters herein stated be inquired into, and that said Royal C. Johnson, if found guilty thereof, be disbarred as an attorney. J. M. Prostrollo. Subscribed and sworn to before me this 14th day of January, 1911. Charles F. Tym, Notary Public."

The answer of the accused admits that he was a duly elected, qualified, and acting state's attorney in and for Hyde county, from about January 1, 1908, to January 1, 1911, a member of the Bar of the Supreme Court, and a member of the law firm of O'Brien & Johnson, at Highmore; admits that on or about June 14, 1909, he instituted proceedings against Frank Brandell, Fred Cline, and George McCarthy, charging them with the crime of grand larceny, committed in Hyde county, in the stealing of certain horses; that said proceedings were prosecuted to final judgment and concluded in the circuit court of said county at the October, 1909, term.

And the accused alleges: "That on or about the 22d day of June, 1909, the firm of O'Brien & Johnson commenced civil actions against Frank Brandell, Fred Cline, George McCarthy, and one Charles Bowman to recover damages for the unlawful conversion of said horses. That the alleged larceny and the alleged conversion arose out of the same transaction, but said civil actions did not depend on the same state of facts as said criminal action depended upon at the time said suits were instituted. That said O'Brien & Johnson remained as attorneys of record in said civil actions until April 23, 1910, when they filed written withdrawals therefrom. That at the time said civil actions were instituted it appeared to the said O'Brien & Johnson and Royal C. Johnson from the evidence disclosed at that time that the civil and criminal actions above mentioned did not depend upon the same state of facts. That afterwards in preparing for the trial of such civil actions O'Brien & Johnson and Royal C. Johnson decided that some of the testimony used in the criminal actions might be used in the civil actions. That thereupon, at the February, 1910, term of court in Hyde

county, S. D., Royal C. Johnson appeared before Hon. Lyman T. Boucher, judge of the circuit court in and for Hyde county, and made a fair and frank statement to him of the facts as stated herein, and said civil actions were continued over said term. That thereafter O'Brien & Johnson and Royal C. Johnson notified W. L. Thompson and James Buchan that they believed it to be their duty under the law to withdraw from said civil actions, and, after giving them time to procure other counsel, made and executed a notice of withdrawal from said actions, served the same upon the attorneys of record for the defendants in such civil actions, and filed the same on April 23d with the clerk of the circuit court of said Hyde county, S. D."

The accused further answered as to the second charge made against him by the said Prostrollo, in substance, as follows: That on or about July 10, 1910, upon complaint of Henry Ringer, Royal C. Johnson, as state's attorney, cause a subpœna to be served on J. M. Prostrollo in an action wherein state of South Dakota was the plaintiff and John Doe was defendant, in which Prostrollo was required to attend before W. B. Hamlin, a justice of the peace in ·Hyde county, that said Prostrollo was confined to an inquiry concerning a certain transaction between said Prostrollo and one Ringer; that, after giving such testimony, no other proceedings were had in said cause of the State v. John Doe and the same was discontinued and dropped; that thereafter, and about the month of August, 1910, a suit was begun in the circuit court of Hyde county against said Prostrollo by Ringer; that said suit was instituted in behalf of plaintiff by one T. Forest Auldridge, and the trial of such action was conducted on behalf of the plaintiff by said Auldridge and A. B. Fairbank, of Huron; that said O'Brien & Johnson and T. Forest Auldridge officed together at that time, and Auldridge was in the employ of said firm at a salary of $25 per month to assist them in such office work as the firm should desire him to perform, with the understanding that any legal cases which came to him directly, or which O'Brien & Johnson refused, could be taken and performed by him, the said Auldridge, if he so desired; and that neither the accused nor O'Brien at any time had any connection with or interest in the said civil

action of Ringer v. Prostrollo, and never received any compensation in said case; that the criminal proceedings in the justice court in the said case of State v. John Doe were had in good faith by the accused as state's attorney of said county, and were had on an investigation had by him to determine whether or not a crime had been committed.

The accused further answering, denies "that, to his best knowledge, information, and belief, at the time of the civil and criminal actions were instituted by W. L. Thompson and James Buchan against the defendants Frank Brandell, Fred Cline, George McCarthy, and Charles Bowman, such civil and criminal actions depended upon the same state of facts. He denies that T. Forest Auldridge in bringing the civil action of Ringer v. Prostrollo was acting under the employ of O'Brien & Johnson or Royal C. Johnson or for them in any way. He denies that the criminal proceeding in justice court in the case of State v. John Doe was a mere pretense or had for the sole purpose of putting Prostrollo on the witness stand, and securing from Prostrollo an admission that said land was government land, and that Prostrollo did not have a relinquishment for same for the purpose of instituting a civil action against said Prostrollo; but avers that the same was had for the sole purpose of discovering whether or not a crime had been committed by the said Prostrollo, and without thought of a civil action. He denies that at the request of himself W. B. Hamlin, the justice of the peace before whom such examination was had, made no record of said case against said John Doe, but such record was made and shown on the docket of the said justice. He denies that either O'Brien & Johnson or Royal C. Johnson have been guilty of any unprofessional conduct in the cases wherein charges have been preferred against said Johnson by said Prostrollo, or in any other matter."

The evidence in the case is very voluminous, consisting largely of court record, but, as there was a very slight conflict in the same as to the proceedings, it will not be necessary to set it out in this opinion.

[1] It will be observed that the accused admits the criminal proceedings in the circuit court resulting in the conviction of

Frank Brandell and Fred Cline of the offense of grand larceny, with the commission of which they were charged, and also the commencement of the civil actions during the pendency of such criminal proceedings to recover the damages resulting in the alleged conversion of the property so alleged to have been stolen, instituted by James Buchan and W. L. Thompson against Charles Bowman, Fred Cline, Frank Brandell, and George McCarthy, resulting in judgments in favor of the plaintiffs; that they remained such attorneys of record until on or about April 23, 1910, when they filed notices of withdrawal as attorneys in said actions. And it is disclosed by the evidence that the actions were subsequently tried in the circuit court by Mr. Bushfield of Miller, and that neither O'Brien nor the accused took any part in said trial, or received any remuneration from the plaintiffs other than $15 and some cents, fees paid out by them in the actions. The statement of the accused that he presented the facts in the case to Hon. Lyman T. Boucher, who was then circuit judge of said circuit, and was advised by him that the firm of O'Brien & Johnson had better withdraw from the actions, is fully corroborated by the evidence of Judge Boucher.

It further appears that the accused and his partner, OBrien, prior to the interview of the accused with Judge Boucher, examined the provisions of section 938, Pol. Code, which reads as follows: "Said state's attorney shall not receive any fee or reward from or on behalf of any prosecutor or other individual for services or in and prosecution or business to which it shall be his official duty to attend, nor be concerned as attorney or counselor for either party other than for the state or county in any civil action depending on some state of facts upon which any criminal prosecution commenced but undetermined, shall depend   *   *   *"—and arrived at the conclusion that they had better withdraw from said actions for the reason that some of the facts necessary to be proven in the civil actions might be the same, or substantially the same, as the facts involved in the criminal action. The accused testified on the hearing that at the time he and his partner commenced the civil actions they were of the opinion that the only question involved in the civil actions would be as to the amount

of the damages sustained by the plaintiffs, as the defendants in the criminal action admitted that they took the horses alleged to have been stolen, but claimed they took them by mistake, and Mr. O'Brien, partner of the accused, fully corroborates this statement.

Assuming, therefore, that the accused honestly believed that the only question involved in the civil suit was as to the amount of damages sustained by the plaintiffs in the civil actions, and that evidence tending to prove the larceny would not be necessary, it is quite clear that the accused, in his connection with the civil actions, acted in good faith, and had no intention of violating the provisions of the section above quoted. We are inclined to take the view, therefore, that the institution of the civil actions by the accused and his partner was the result of an honest misconception as to the facts that might be necessary to be proven on the trial of the civil actions under the circumstances connected with the case, as then understood by them, and that no intentional wrong or violation of the statute was intended.

[2] We proceed now to consider the second charge of misconduct alleged against the accused, viz., the filing of the criminal complaint in the case of State v. John Doe, in which Prostrollo was subpœnaed as a witness for the purpose alleged in the accusation of procuring testimony from him to be used in a civil action. Section 1 of chapter 200 of the Session Laws of 1907 provides: "Whenever any complaint verified upon information and belief is laid before any justice of the peace, police justice or municipal judge, that a criminal offense has been committed against any law of this state and asking for an investigation of the same, such justice of the peace, police justice or municipal judge shall issue his subpœna requiring any and all persons to attend before him at the time and place mentioned in such subpœna and submit to an examination and give testimony concerning any violation of law about which he may be questioned. * * *" It will be observed that it is alleged, and the record sustains the allegation, that the complaint was issued upon a charge made against John Doe. It appears from the evidence that Prostrollo was the only witness examined, and that upon the close of his examination apparently all further proceedings in the case were dropped, and soon thereafter

a civil suit was commenced against Prostrollo by Auldridge, who, it appears from the evidence, was connected with the office of O'Brien and the accused at a nominal salary of $25 a month and such compensation as he might receive from the trial of cases turned over to him by O'Brien and the accused, which, for any reason, they did not care to take. The testimony of the witness Prostrollo seem to have been taken by a stenographer, but was never, so far as the record discloses, filed in the office of the clerk of the circuit court but this evidence, as appears from the testimony of Auldridge, was upon his desk and in his possession, for a time at least, before commencing the action.

In regard to this transaction, the accused testified substantially as follows: "Some time in June or July, 1910, one Henry Ringer came to my office and complained to me, as state's attorney, that he thought a crime had been committed by J. M. Prostrollo, and that Prostrollo had procured money from Ringer under false pretenses, and asked me to file a criminal complaint in justice court against him. I told him it was my custom in every criminal case, since the passage of chapter 200 of the Laws of 1907, to conduct an investigation under that statute, and I have conducted such investigation, I think without exception, in every case that has been brought before me—every criminal case, that those cases were entitled, 'The State of South Dakota v. John Doe,' that no defendant might be apprised of the nature of any charge against him; that as Mr. Ringer resided in De Grey, about 35 or 40 miles from Highmore, it was necessary for me to make the affidavit for this investigation myself, as I have done in practically every case that has been presented; that I made such affidavit at the request of Ringer, who had come to my office with Henry Volz, who was a cousin of his, and had a subpoena issued, subpoenaing Prostrollo to appear before the justice of the peace, W. B. Hamlin, before whom the affidavit was made; that in all investigations of this kind the justice of the peace has had his office in the state's attorney's office. When Mr. Prostrollo was brought before me, I took the testimony by questions and answers, and Mr. O'Brien was present, and Miss Downer was the stenographer; that after this testimony was taken, Henry Volz came to my office, I think some time in July, and in

the presence of Mr. OBrien, stated to me that he was acting for Mr. Ringer, and asked be about the criminal case. I told him at that time that there was a question in my mind as to whether or not Mr. Ringer could secure conviction in the criminal case, as Mr. Prostrollo had denied that he had sold to him a relinquishment to this government land. He then asked me if a criminal case could not be instituted, whether or not a civil case could be instituted, and the money recovered that had been paid by Ringer to Prostrollo. I told him that undoubtedly such a suit could be started, and he desired to retain O'Brien & Johnson to conduct such suit at the request of Ringer. I told him that under the law we could take such a case, but that it was not our practice, and that he had better secure other attorneys because some time in the future, on the further testimony, a criminal case might be started. He talked with me about different attorneys, and the witness suggested, among others, Mr. Auldridge; that Mr. Auldridge was retained and drew the complaint, and the pleadings in the case himself, and the witness never saw them until this proceeding was instituted against him; that he did not advise or consult with Mr. Auldridge or Mr. Fairbank, who assisted Mr. Auldridge in the trial, concerning the case, and was not in the court-room at the time the case was tried; that in bringing the action Mr. Auldridge was not acting as employe of O'Brien or the accused, and that neither he nor O'Brien ever received any compensation in said case; that the investigation conducted under chapter 200 of the Laws of 1907 was not a pretense, was not had for the purpose of securing any testimony from Mr. Prostrollo to be used in a civil action, but was had by him, as state's attorney, in good faith for the sole purpose of discovering whether or not a crime had been committed." The testimony of the accused is not contradicted, and is in the main corroborated by the testimony of Mr. O'Brien, Mr. Auldridge, and Mr. Ringer. The only conflict in the evidence was as to a statement claimed by Prostrollo to have been made to him by the accused at the close of the examination of Prostrollo as a witness, but which alleged statement was denied by the accused, and the evidence of the justice and Mr. O'Brien corroborates, to a certain extent, the denial of the accused,

and quite clearly establishes the fact that Mr. Prostrollo was mistaken as to the statement having been made by the accused. It would seem, therefore, that the accused in taking the testimony of Mr. Prostrollo was simply carrying out the practice of his office as to the investigation of all criminal complaints made to him. In the absence, therefore, of evidence that the proceeding was taken from improper motives, or for an improper purpose, we are of the opinion that the charge as made in the accusation is not sustained.

In exonerating the accused of the charges in this proceeding, we should not be understood as implying that a state's attorney may with propriety, under any circumstances, be connected at the same time with a civil and criminal action, involving the same transaction. Nor should we be understood as expressing any opinion regarding the proper interpretation of chapter 200, Laws 1907. The language of that act is broad and comprehensive. Independently of constitutional limitations, it would seem to justify the practice pursued by the accused and which counsel assert is the practice which has been generally followed since this statute was enacted. Manifestly, a proper interpretation of such a statute would require consideration of sacred constitutional rights which should not be defined in this proceeding. However interpreted, this act materially changes long established methods of procedure in this jurisdiction.

[3] Certain it was not intended to be employed for the purpose of procuring evidence for use in civil causes. When invoked for a proper purpose, the practice under it must be governed by fundamental principles. Clearly, the interpretation given it by the accused, and the practice said to be generally followed, would in a proper case give rise to serious and doubtful questions of constitutional law—questions which should receive the thoughtful attention of state's attorneys and all members of the bar. And, while we find that Mr. Auldridge's employment in the civil action against Prostrollo was free from any improper motive, it should not be understood that we concede the propriety of such employment under the circumstances disclosed by the evidence.

Therefore it is the conclusion of the court that the charges against the accused have not been sustained, and that this proceeding should be dismissed upon the merits.