(January 13, 1920.)

## In Re O. R. BAUM.

[186 Pac. 927.]

ATTORNEY AT LAW—DISBARMENT.

1. A proceeding brought for the purpose of procuring disbarment of an attorney is not a lawsuit between parties litigant. It is in the nature of an inquest or inquiry as to the conduct of the accused.

[As to causes and proceedings for disbarment and power of courts to disbar, see notes in 95 Am. Dec. 393; 45 Am. St. 71.]

2. A disbarment proceeding is civil rather than criminal in its nature.

3. In disbarment proceedings, charges of official misconduct must be established by a clear and undoubted preponderance of the evidence.

4. It is improper for a village attorney to institute and prosecute an action against the village during the continuance of his term of office, but where it appears that the village attorney applied to the board of trustees of the village for and was granted permission to file an action against the village, and it is shown that he acted in good faith, he should not be disbarred.

5. Under a charge that an attorney at law has represented conflicting interests in an action, where it appears that the accused acted in good faith, without improper or corrupt motives, and it is not shown that any injury resulted to his client, cause for disbarment does not exist.

6. Ordinarily a charge that an attorney has been guilty of criminal misconduct, should not be treated as ground for disbarment, where the misconduct is unconnected with the prosecution of his office as an attorney, until he has been convicted of a felony or a misdemeanor involving moral turpitude.

7. A charge of criminal misconduct against an attorney, unconnected with the prosecution of his office, in order to be a sufficient ground for disbarment before conviction in a proper court, must be of a nature involving inherent dishonesty and of such a character as to render one unworthy to hold the office of attorney.

8. An attorney against whom disbarment proceedings are instituted is entitled to have the charges fully stated, and is not required to defend against or explain any matter not specified in the charges.

Original action for disbarment of attorney. *Dismissed.*

J. M. Stevens, J. H. Peterson, E. R. Dampier, R. S. Anderson, C. T. Cotant, W. T. Stafford, W. G. Bissell, T. Bailey Lee, Edwin Snow and Karl Paine, for the Attorney.

James P. Pope, Asst. Attorney General, and Baird & Davis, appearing by request of the court.

Counsel file no briefs.

RICE, J.—Affidavits, properly verified, were filed with the court charging O. R. Baum, an attorney of this court, with unprofessional conduct. The court thereupon directed that the charges be formulated and a citation issued directing the accused to appear and answer at a certain date. In all, sixteen charges were made. An answer was filed denying all of the charges and the matter was referred to Honorable H. F. Ensign, one of the judges of the fourth judicial district, to take the testimony. Testimony was introduced with reference to all the charges, except the fourteenth. After the record was transcribed the referee made his return to this court, finding generally that charges Nos. 2 and 15 were sustained, and that charge No. 11 was sustained subject to the judgment of this court as to whether a cause for disbarment was stated therein, and that all the other charges were not sustained. With regard to charge No. 11, we do not think it is sufficient in substance, nor did the evidence introduced thereunder show any cause for disbarment.

We have examined the record of the testimony with great care. With reference to charges Nos. 3, 4, 8, 9, 10, 13 and 16, it is sufficient to say that the charges were not sustained. With reference to the other charges we will make such comments as they seem to require.

At the hearing before the referee there seemed to be some misconception as to the nature of this proceeding. It is not a lawsuit between parties litigant. It is rather in the nature of an inquest or inquiry as to the conduct of the accused.

(*Bar Assn. v. Casey*, 211 Mass. 187, Ann. Cas. 1913A, 1226, 97 N. E. 751, 39 L. R. A., N. S., 116; *In re Wourms*, 31 Ida. 291, 170 Pac. 919.) It is not a criminal proceeding, but is rather one of a civil nature. (*Wernimont v. State*, 101 Ark. 211, Ann. Cas. 1913D, 1156, 142 S. W. 194; *State v. Mosher*, 128 Iowa, 82, 5 Ann. Cas. 984, 103 N. W. 105; *Ex parte Wall*, 107 U. S. 265, 2 Sup. Ct. 569, 27 L. ed. 552, see, also, Rose's U. S. Notes.)

It may be stated to be a well-settled rule in disbarment proceedings that charges of official misconduct must be established by a clear and undoubted preponderance of the evidence. (*In re Sherin*, 27 S. D. 232, Ann. Cas. 1913D, 446, 130 N. W. 761, 40 L. R. A., N. S., 801.)

Tested by this rule, charge No. 1 is not sustained.

Charge No. 2 was in effect that Baum had collected $40 from Peyton R. Harris on a judgment obtained against him by the Aberdeen Springfield Canal Company; that the matter was thereafter adjusted by a promissory note, executed in settlement of the indebtedness, but no credit was given Harris for the $40 which he had paid, and that interest was calculated on the total judgment and included in the note at the rate of 12% per annum. In his verified answer to this charge, the accused denied that Harris had paid him at any time the sum of $40, or any other amount upon the judgment. Upon the hearing before the referee when letters from the accused to Harris were introduced, showing that Harris was entitled to credit of $40, Baum admitted that he had received the money and offered to give his check to Harris in settlement of the demand. His explanation of this situation is that at the time of the institution of the disbarment proceedings he had forgotten about Harris having paid him the $40, and that upon the first examination of his office files he failed to discover he had acknowledged receipt of the same, and first discovered his error when the disbarment proceedings were in progress. In further explanation of this matter he claims that he was handling a great number of matters in his office, and that his clerks and stenographers would write many of

his letters without dictation, and he had confidence in them and their ability to properly perform their work, and that he often signed letters as a matter of form or after a hurried examination. It further appears from the testimony that the $40 was not paid to the company, but was retained by Baum.

From the explanation given by the accused, it must be conceded that the affairs of his office were conducted negligently and carelessly, but we accept his explanation. The power of disbarment is one which should be exercised with caution, and with due regard to the serious consequences which may follow from an exercise of the power. (*In re Wourms, supra; In re Wall, supra.*)

Moreover, it does not appear that Harris made demand upon Mr. Baum to give him the $40 credit, or cause it to be given him by the company. C. S., sec. 6578, subd. 5, provides that an attorney may be removed or suspended for failure, within ten days after written demand and tender of fees due from his client, to pay over or deliver any money or other property belonging to his client which he shall have received in his office of attorney in the course of collection or settlement of any claim or demand. Harris was not Baum's client. It would seem that a demand in this case would be even more necessary than if the relation of attorney and client had existed.

The fifth charge was that while acting as city attorney of American Falls, the accused brought an action on behalf of and as attorney for W. T. Oliver against the village of American Falls, the title of the action being W. T. Oliver et al., Plaintiffs, v. John Calder and the Village of American Falls, et al., Defendants; that the accused wrongfully and knowingly advised the board of trustees of said village of American Falls to default in said action, which advice was contrary to and against the public interests of the said village.

The duties of a city or village attorney are prescribed by C. S., sec. 4065, which reads as follows:

"The city or village attorney shall be the legal adviser of the council and board of trustees. He shall commence, prose-

cute and defend all suits and actions necessary to be commenced, prosecuted or defended on behalf of the corporation, or that may be ordered by the council or board of trustees. When requested, he shall attend meetings of the council or board, and give them his opinion upon any matters submitted to him, either orally or in writing as may be required.''

By his answer, Baum admits that he was village attorney at the time in question and that he brought the action referred to in the charge, but states that before filing such action he appeared before the village board in regular session and stated to the members thereof that Oliver was his father-in-law and desired him to bring the action and asked the board to be relieved of his obligation, if any there was, to appear for the village in such case, and also asked permission to file the action for Oliver, and that the board gave its consent. It appears by a preponderance of the evidence that he did not advise the members of the board to suffer a default in the case.

In view of the statutory duties of a village attorney, the impropriety of his bringing an action against the village is apparent, as is also the futility of seeking to be relieved of his duties by action of the board of trustees of the village. These duties are prescribed by statute. The members of the village board were agents of the village, charged with statutory duties the same as the accused. The board did not create or impose his duties upon him; neither could they relieve him thereof. Under the statute it was his duty to defend all actions brought against the village. But in this matter, the accused appears to have acted in ignorance of his duty rather than in bad faith.

Charge No. 6 is of a similar nature. It is as follows:

''That in the case of *Spencer L. Baird v. Board of County Commissioners of Power County*, filed in the district court of the fifth judicial district of the state of Idaho, in and for Power county, you acted as the attorney for the Independent Highway District No. 1 of Power county, and as attorney for the board of county commissioners of Power county, in which

the interests of the two boards were conflicting and the success of one would inevitably be detrimental to the welfare of the other, all of which more fully appears in the records and files in the said case.''

The accused was attorney for the highway district. The highway district and the county had attempted to enter into a contract by which the highway district constructed a portion of a certain highway for the county. Thereafter the highway district presented its claim against the county for the cost of such construction, and the same was allowed by the commissioners. Spencer L. Baird, county attorney, appealed from the action of the board in allowing the claim. Baird had a partner, Davis, who was attorney for another highway district in the same county. Upon the appeal being taken, the board of commissioners passed a resolution reciting that it appeared to the board that Ben W. Davis, law partner of Baird, was regularly employed counsel of Highway District No. 2, and that Baird, by reason of that fact, was financially interested, and deeming it necessary to employ other counsel, it was ordered that the firm of Bissell & Baum be employed to act for the said board in all matters concerning the settlement of the account between Highway District No. 1 and Power county.

It requires no discussion to show that the interests of the highway district and the county were conflicting. By filing its claim against the county, the highway district was making an adverse claim. The board of commissioners may have thought the claim was a just one, and ordered it paid, but clearly it was not within its province to employ counsel in an attempt to aid a claimant to recover money from the county.

C. S., sec. 3505, is as follows:

''No county officer must, except for his own services, present any claim, account or demand for allowance against the county, or in any way advocate the relief asked on the claim or demand made by another.

''Any citizen and taxpayer of the county in which he resides may appear before the board and oppose the allowance of any claim or demand made against the county.''

C. S., sec. 3512, provides that upon appeal from the board of county commissioners to the district court, the matter must be heard anew. Not only was the board of commissioners, under section 3505, *supra,* prohibited from in any way advocating the relief asked on a claim or demand made against the county, but under section 3512, when an appeal is taken to the district court from its action allowing a claim against the county, it occupies a position similar to that of a judge of an inferior court from which an appeal has been taken.

We cannot do otherwise than express our disapproval of the course pursued by the accused. However, it does not appear that any compensation was paid to Mr. Baum out of the county treasury for his services. As attorney for the highway district he had a right to appear before the district court and press the claim of the district to the same extent that he had a right to urge its allowance by the board of commissioners. No concealment was used, and it appears from the record that Mr. Baum supposed he was acting with due regard to the ethics of the profession.

Under charges of this kind, where it appears that the accused acted in good faith, without improper or corrupt motives, and it is not shown that any injury resulted to his client, cause for disbarment does not exist. (*In re Collins,* 147 Cal. 8, 81 Pac. 220; *In re Johnson,* 27 S. D. 386, 131 N. W. 453; 6 C. J. 590, 591.)

In the seventh charge Baum is alleged to have attempted to force one William Kercher to release a mortgage which Kercher held against the accused on certain lots in the village of American Falls, and with using his office as prosecuting attorney of Power county to intimidate Kercher by threatening to have him arrested and imprisoned, and with writing threatening and improper letters to Kercher to wrongfully require him to release said mortgage without payment.

With reference to this charge it may be stated that the evidence shows that the release of the mortgage by Kercher was not procured by threat or intimidation, but while the matters involved in the transaction were pending it was shown that

the accused wrote and sent to Kercher a letter containing the following:

"Unless you desire to release this mortgage so I can make some use of this property, it will be necessary to have a warrant issued for you for obtaining money under false pretenses."

C. S., sec. 8467, is as follows:

"Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying or adapted to imply, any threat such as is specified in this article, is punishable in the same manner as if such money or property were actually obtained by means of such threat."

C. S., sec. 8462, defines extortion as follows:

"Extortion is the obtaining of property from another, with his consent, induced by a wrongful force or fear or under color of official right."

C. S., sec. 8463, reads in part as follows:

"Fear, such as will constitute extortion, may be induced by a threat, either: . . . . .

"(2) To accuse him, or any relative of his, or member of his family of any crime."

Also, we quote C. S., sec. 8589, as follows:

"Every person who knowingly and wilfully sends or delivers to another any letter or writing, whether subscribed or not, threatening to accuse him or another of a crime, or to expose or publish any of his failings or infirmities, is guilty of a misdemeanor."

It is no defense to a charge of extortion that the property justly belongs to the accused.  (*In re Sherin, supra.*)

The letter referred to above was sent by Mr. Baum in his private capacity, and not as prosecuting attorney; nor was the sending of it in any way connected with the prosecution of his profession as attorney.  The statute (C. S., sec. 6578) provides that an attorney shall be disbarred upon his conviction of a felony or misdemeanor, involving moral turpitude, in which case the record of conviction is conclusive evidence.

In matters of this kind, where the charge of a criminal offense is not connected in any way with his office as an attorney, it is generally held that courts should not enter a judgment of disbarment except upon conviction of a felony or misdemeanor, involving moral turpitude. (See dissenting opinion of Mr. Justice Field in *In re Wall, supra; In re Saddler,* 35 Okl. 510, 130 Pac. 906, 44 L. R. A., N. S., 1195.)

It is held by some courts that an attorney may be disbarred for criminal misconduct not committed in connection with his office as attorney. (*In re Wall, supra; In re Wellcome,* 23 Mont. 140, 58 Pac. 45; *In re Wilson,* 79 Kan. 450, 100 Pac. 75.) But in such cases the criminal misconduct should be such as to involve inherent dishonesty and of itself show one to be unworthy to hold the office of attorney. We do not consider the conduct of accused in this case to be of such a character.

Charge No. 12 is as follows:

"That you in violation of the rules of this court and the ethics of the legal profession, filed a false affidavit for attachment in the case entitled *Charles Schmidt v. Fred Grenz,* in the district court of the sixth judicial district of the state of Idaho, in and for Bingham county, as more fully appears by the records and files in said action."

In presenting this matter in the first instance, only the first paragraph of the affidavit of attachment was offered in evidence. This paragraph stated that the defendant was indebted to the plaintiff upon two promissory notes, and that no part or portion of either of them had been paid. But one of the two notes appeared as an exhibit in the files of the action. Apparently it was supposed that the other note had been paid at the time, but the evidence introduced at the hearing showed that this was not the case, but that both notes were in existence and unpaid. In making his defense, however, Mr. Baum put in evidence the entire affidavit of attachment which was made by himself. From this it appears that the complaint consisted of nine alleged causes of action, representing nine distinct claims against Grenz owing to eight dif-

ferent parties. It was stated that all of the claims, excepting those owing to Schmidt, were assigned to Schmidt for the purpose of collection. The affidavit referred to stated that the defendant was indebted to the plaintiff in the sum set out in each cause of action. But it appears that plaintiff had no information of, and had not consented to the assignment to himself of the other causes of action.

We do not understand that an assignment can be made to a person, even for the purpose of collection, without the assignee's knowledge and consent. The affidavit, therefore, was not true. However, we are not inclined to consider this procedure cause for disbarment, but must express our disapproval of the action.

The fifteenth charge is as follows:

"That you, in violation of paragraph 5 of section 4002 of the Revised Codes of Idaho, collected for and refused to deliver to one Thomas C. Smith, a client of yours who lived at Windsor, Colorado, certain money belonging to the said Thomas C. Smith, after written demand so to do, and after all fees and expenses due you had been paid."

The accused answered denying specifically the charge, and answering affirmatively alleges that he received from said Thomas C. Smith, an attorney of Windsor, Colo., a claim for collection against one P. R. Link, amounting to $150; that upon his request the sum of $15 was advanced for costs in the action. The answer then proceeds: "But that about this time, this defendant, after having had a personal interview with the said P. R. Link, discovered that the said P. R. Link had no property which was subject to attachment in Blaine county or elsewhere, but that the said P. R. Link then and there informed this defendant that he had a promissory note for $80 and $20 in cash which he would pay to compromise the claim in full satisfaction thereof; that this defendant thereupon entered into a compromise agreement with the said P. R. Link, whereby he agreed to and did compromise and settle said claim, taking therefor the sum of $20 in cash and the said promissory note in the sum of $80. The answer then

alleges that Smith refused to ratify the compromise, and that thereafter the accused paid to W. H. Witty, who was then representing Mr. Smith, the sum of $55.25, being the full amount demanded by Witty, although in so doing he paid more than he had collected on account of the claim.

In regard to this charge, the evidence shows that the accused did remit to Smith the full amount he had collected, less his commission and less the $15 advanced for costs. With reference to the costs advanced, in his testimony the accused claimed that he had filed suit against Link. No such claim is made in his answer. In explanation, he states that he came to American Falls in 1912, the year the business was given to him; that his filing cabinet was not very good and was a very meager affair, and business came in at such a rapid rate that it was thrown around in baskets and everything else, and upon Mr. Witty writing him this letter he made a research of the office and was unable to find any letters with the exception of one or two which were not following the others in date, merely isolated letters. And again in his testimony he states:

"And Mr. Smith turned over to us all the correspondence he had and no reference was made with reference to a suit, and the matter was so old, and I handled so many matters in the six years, and business came in in such bunches, and from 1913 to 1916 I was so far behind working from 16 to 24 hours a day, and until the exhibits were introduced here, I did not know there was any controversy until Mr. Witty made the statement no suit was filed, and in the limited time I have had I have been busy every day and haven't had time to go into the matter. . . . . "

He was unable to give any information as to any court in which suit was brought. In one of his letters to Mr. Smith he refers to the terms of the district court. But if an action was brought in the district court, it would have been an easy matter to have shown that fact.

The entire correspondence between Mr. Baum and Mr. Smith was introduced in evidence. This correspondence as

a whole tends to show that Mr. Baum compromised the claim against Link without authority from his client; that he did not frankly disclose the actual situation to his client, but on the contrary sought to mislead him.

One against whom disbarment proceedings are instituted is entitled to have the charges fully stated. (*In re Cobb,* 84 Cal. 550, 24 Pac. 293; *People v. Matthews,* 217 Ill. 94, 75 N. E. 444; 6 C. J. 605.)

Mr. Baum was not called upon to answer or defend against any matters not contained in the charge above quoted. He cannot be held accountable in this proceeding for any misconduct not specified in the charges, or for failure to explain or justify the same.

Upon the entire record in this case, it appears that there were things in the conduct of the accused which are subject to severe criticism; other things which were improper may have been the result of carelessness or inattention. But we have reached the conclusion that the matters complained of do not require a judgment of disbarment or suspension.

Budge, J., concurs in the conclusion reached.

Morgan, C. J., dissents.