BROWNELL *v.* WIDDIS.

1. MOTIONS—POWER OF COURT TO AMEND ITS ORDERS.
   Every court of superior jurisdiction has power to amend its own orders, and, in the absence of statutory limitations, it has jurisdiction subsequently to amend any order which it had jurisdiction originally to enter, and can make such amendment *nunc pro tunc* so that its records will speak the truth.

2. ATTORNEY AND CLIENT—AMENDING ORDER ADMITTING TO PRACTICE.
   A circuit court which had jurisdiction to admit an applicant to practice law, had authority several years after such order was made to amend the original application and order correcting errors therein, if any, as to applicant's age and citizenship, necessary to enable him to qualify, upon proper showing that all doubt as to same had been removed.

3. SAME—DISBARMENT PROCEEDINGS—AMENDED ORDER ADMITTING TO PRACTICE NOT AFFECTED BY REVOKING ORIGINAL ORDER.
   While said amended order stands in full force and effect, an order by the circuit judge vacating said original order admitting applicant to practice has no effect on his status as a member of the bar.

Appeal from Genesee; Brennan (Fred W.), J. Submitted April 8, 1921. (Docket No. 49.) Decided June 20, 1922.

Petition by Roy E. Brownell, prosecuting attorney of Genesee county, against Albert L. Widdis to vacate an order admitting defendant to the bar. From a decree for plaintiff, defendant appeals. Reversed.

*Merlin Wiley*, Attorney General, and *J. E. Converse*, Assistant Attorney General, for plaintiff.

*Charles C. Stewart* and *W. C. Gottman*, for defendant.

BIRD, J.   On the 18th day of June, 1891, an order was entered in the records of the Genesee circuit court admitting defendant to the bar, and authorizing him to practice law in the courts of this State.   Subsequently, while a member of the Wayne county bar. some doubt arose in his mind as to his allegations of citizenship and age in his application for admission. To settle this doubt he applied to the circuit court in Wayne county to be admitted to citizenship, and on the 3d day of March, 1897, an order was made admitting him to citizenship.   Defendant then asked for and secured from the circuit court of Wayne county an order amending the petition and former order made in Genesee county admitting him to practice.   Later and on the 29th day of September, 1919, defendant made a showing and applied to the circuit court for the county of Genesee for an order amending the original application and order of admission on file in that court.   In pursuance of that application the following order was made:

"STATE OF MICHIGAN—In the Circuit Court for the County of Genesee.

"In the Matter of ALBERT WIDDIS, an Attorney at Law.

"At a session of the circuit court for the county of Genesee, held at the city of Flint on the 29th day of September, 1919.

"Upon reading and duly considering the petition of Albert Widdis, hereto annexed, it appears to the court that the said petitioner is entitled to the relief prayed for in said petition.

"Therefore, it is ordered hereby that the order of admission made in behalf of Albert Widdis by the circuit court for the county of Genesee, on June 18, 1891, admitting the said Albert Widdis to practice law in the several courts of record of this State, be and the same hereby is confirmed, and all defects therein hereby set at naught; and it is further ordered that this

order be entered in the records of this court *nunc pro tunc* as of the date of 31st day of March, 1897.

"EDWARD D. BLACK,
                                      "Circuit Judge."

On the 21st day of April, 1920, plaintiff, as prosecuting attorney of Genesee county, filed a petition in the Genesee circuit court praying for an order setting aside the original order of admission made on June 18, 1891, on the ground that defendant falsified as to his qualifications with respect to his age and citizenship. A hearing followed and an order was made by the trial court setting aside the original order of admission of June 18, 1891, on the grounds prayed for in the petition. No notice appears to have been taken of defendant's subsequent petition to amend the original order, nor of the amended order heretofore quoted.

1. It, therefore, becomes material to inquire as to the validity of the amended order, because that order was not vacated. It will, of course, be admitted without controversy that the circuit court of Genesee county had authority on the showing made to enter the original order of admission. If the court had the authority to enter that order, did it have a right to subsequently amend it? It is said in 15 Enc. Pl. & Prac. p. 349 that:

"Every court of superior jurisdiction has, in the absence of statutory limitations, power to control its own orders and to direct when and under what conditions they shall be operative. Orders are not regarded as *res adjudicata* with the same strictness as in the case of judgments. Accordingly, every order made in the progress of a cause may be rescinded or modified upon a proper case for such relief being made out."

It is held in *Fanning* v. *Dunham,* 4 Johns. Ch. (N. Y.) 35, that an order made upon motion may be discharged or varied upon motion.

A very full discussion of the powers of the court to amend its own orders is found in the case of

*Belmont* v. *Railway Co.*, 52 Barb. (N. Y.) 637.    The case is a very long one but the gist of the opinion is found in the following language:

"To sum it all up briefly, it is well settled that whatever can be done upon motion to the court, may by the court, upon further motion, be altered, modified or wholly undone."

"In case of an omission or error in the record the power exists in the court to amend such record so that it may conform to the actual facts and truth of the case.    But where the rights of third persons will be affected by the allowance of an amendment for the purpose of putting into a process, pleading, or return, something which was not originally in such process, pleading, or return, it has been decided that such an amendment will not, as a general rule, be allowed.    *    *    *

"It is competent for the court to make an entry *nunc pro tunc*, even though the rights of third persons may be affected.    But record entries *nunc pro tunc* can only be properly made when based on some writing in a cause which directly or by fair inference indicates the purpose of the entries so sought to be made."    11 Cyc. p. 764.

"Mistakes in the record may be corrected, and omissions supplied, *nunc pro tunc*, where neither party has been misled."    2 Green's Michigan Practice (3d Ed.), § 1073.

In *Frink* v. *Frink*, 43 N. H. 508 (82 Am. Dec. 172), judgment was entered for plaintiff for the entire estate in controversy, whereas it should have been entered for only one-half of it, in accordance with the stipulation of the parties.    Twelve years afterwards this error was sought to be cured by an amendment of the record.    In speaking of the power of the court to amend its own records, it is said:

"Every court exercising a continuing jurisdiction— having an office for the preservation of its records, and the charge of those records by a proper officer—

has by law an implied authority to amend its records, to make them conform to the facts and truth of the case; *Remick* v. *Butterfield*, 31 N. H. 85 (64 Am. Dec. 316), * * * or, as the same doctrine is well expressed by Fletcher, J., in *Balch* v. *Shaw*, 7 Cush. (Mass.) 284, there can be no doubt that it is competent for a court of record, under its general inherent and necessary authority, to correct the mistakes and supply the defects of its clerk or recording officer, so as to have the record conform to the actual facts and truth of the case. And this may be done at any time, as well after as during the term. The length of the time in this case (12 years) between the granting of the license and the making up of the record does not take away the right or jurisdiction of the court," citing cases.

We think it must be held that the Genesee circuit court had the authority to amend the original application and order. It was an *ex parte* matter, was in the interest of justice and enabled defendant to correct any mistakes or errors which may have been included in the original application and order.

Having arrived at this conclusion, it follows that the amended order admitting the defendant to practice was in force, and the only order which was in force when plaintiff filed his petition to disbar defendant. The force of this amended order appears to have been ignored by plaintiff in his petition, and it also appears to have been ignored by the presiding judge, as the order which he made is directed to the original order made June 18, 1891. If defendant is to be disbarred on the grounds set up in plaintiff's petition, the amended order must be disposed of in some way, either by setting it aside or by modification. The amended order admitting defendant to practice not having been vacated, defendant's status as a member of the bar was not affected by the order which was made by the trial court.

2. In view of the fact that nearly 30 years have

elapsed since the original application and order were made, defendant has pleaded the statute of limitations. This is a question over which there is much controversy in the briefs of counsel. If we regarded the order made by the trial court as an effective one, this question would be a serious one under the provisions of our statute and under the holdings of this court. Under the circumstances, however, we do not deem it necessary to consider this defense.

3. It may not be out of place to offer some comment on the facts shown by this record. Counsel for plaintiff is inclined to assume that the record shows defendant guilty of wilful and deliberate perjury in his original application on the questions of age and citizenship. We cannot agree with this conclusion. It is shown by defendant's testimony, and is not contradicted, that after practicing his profession for a time in Wayne county he was desirous of becoming a candidate for a public office; that the point was made against his candidacy that he was not a citizen of this country. He then sought out his father and requested information in regard to his citizenship, but his father refused to give him any information because he was opposed to his entering the field of politics. It was then that defendant resolved to clear the matter up by making application to the courts to be admitted to citizenship. I do not understand that defendant knew he was not a citizen when he made his original application, but was then, or subsequently, in doubt about it, and the proceedings which followed were taken by him to clear up that doubt. The doubt was engendered principally because of the fact that his father originally resided in the States. Then for several years he lived in Canada looking after certain business interests, after which he returned to the States again. Whether his father became a citizen of Canada, and, if so, whether, on returning to the

States, he declared his allegiance to America, defendant did not know.   We think the record falls far short of establishing wilful and deliberate perjury.   At any rate, we should be slow in drawing that conclusion after the lapse of so, many years.

Bearing upon the care and caution to be exercised by the courts in such cases, it was said in *Ex parte Burr*, 9 Wheat. (U. S.) 529, that:

"The profession of an attorney is of great importance to an individual and the prosperity of his whole life may depend upon its exercise.   The right to exercise it ought not to be lightly or capriciously taken from him. * * * The discretion to remove or suspend ought to be exercised with great moderation and judgment. * * * The power is one which ought to be exercised with great caution."

As illustrating the attitude of the courts in dealing with applications to disbar attorneys for offenses after a great lapse of time, the following will throw some light:

In *Re Holland*, 6 U. C. Q. B. 441, an attempt was made to disbar a young attorney for having sworn in his application that he had been employed as a clerk by an attorney for three years, whereas it was contended that he had actually served only seven months. The statute required actual service for three years. The court refused to disbar the attorney and said, in part:

"We, therefore, discharge the rule as regards Mr. Holland; not upon the principle that this court has any discretionary power to dispense with what a statute prescribes, but because there must be, in the first place, from the nature of the subject, some degree of discretion to be exercised by the court in determining what shall be regarded as service; and in the next place the courts in England have determined that they have a discretion in refusing to entertain an application against an admission, after it has taken place; which discretion they have exercised by rejecting such

applications when they have been supported upon grounds quite as strong as these before us."

In *Re Knott*, 71 Cal. 584 (12 Pac. 780), a petition was filed to disbar Mr. Knott on the ground that he had made a false affidavit in a proceeding to obtain a patent at Washington. After consideration of the question as to whether he might have made the affidavit in good faith, the court, in refusing to disbar, said:

"We have before had occasion to condemn the practice which is too common, of making affidavits to what the affiant may claim to be the legal effect of facts not stated. They are often simply impositions upon the court. In this case the respondent was at the time young and inexperienced, and relied upon the assurance of an older and more experienced lawyer, that he could properly make the affidavit.

"It was not really an act as an attorney in our jurisdiction, and could probably only be considered as affecting the moral character of the respondent. The accuser desires to have the proceeding dismissed, saying that he made the accusation under the influence of anger. We do not recognize the right of an accuser to have such a proceeding dismissed; but having examined the evidence, we are inclined, in view of all the circumstances, to attribute the fault, though a grave one, to youth, inexperience and ignorance."

In *People, ex rel. Deneen*, v. *Coleman*, 210 Ill. 79 (71 N. E. 693), a petition was filed for the disbarment of Coleman on the ground that he had been convicted of a conspiracy to obtain money from insurance companies. The respondent admitted the charge but stated that he was afterwards pardoned without having served his term. It appeared that since admission Coleman had been a reputable attorney and in good standing at his bar. In denying the application the court said, in part:

"We are not disposed to adopt that view in this case; thirteen years had elapsed between the time of conviction and the time of the application for admis-

sion to this bar, and to hold, as an abstract proposition of law, that an error once made is to forever condemn the man who makes it is a thing we are not disposed to do.   The opportunity and the hope held out to all men to repent and correct their ways, if they have ever been wrong, are the only possible incentives the law can know, that can work the reformation of men who have gone wrong.   We are unable to say, as a matter of law, that this man may not have repented and may not have become a good citizen, although he may have been guilty as charged in the indictment found in the Indiana court under which he was convicted."

In *Re Cobb,* 84 Cal. 550 (24 Pac. 293), in which Cobb was charged with violating his oath as attorney at law, the court refused the application, making this comment:

"While the conduct of the respondent in the premises may be subject to some adverse criticism, we do not think that the case made out is strong enough to warrant us in disbarring or suspending an old attorney who has practiced law for more than forty years without any previous stain upon his professional reputation."

If we are to observe the trend of these decisions we should hesitate to concur in an order disbarring defendant at this late day, even though he merited criticism for a youthful indiscretion.   It is not our purpose to place the seal of approval upon conduct such as is alleged in this petition.   To make a wilfully false affidavit to gain admission to the bar is reprehensible and such conduct deserves an order of disbarment, if complained of within a reasonable time, but where nearly 30 years have elapsed during which time the offender has practiced his profession and been elected to positions of trust, the testimony should be more convincing than it is in this case to merit an order of disbarment.

During the years which have intervened between the

order of admission and the filing of this application defendant has practiced his profession in this State and has been twice elected circuit judge in his judicial district and is now holding that office. The testimony shows no stain on his professional or judicial reputation, and the assistant attorney general in his brief admits that no complaint is made of defendant's conduct since the act complained of, which occurred over 30 years ago.

If all men over 50 years of age who are now holding responsible positions of public and private trust were to be judged, without mitigation, for acts and irregularities committed by them when 18 or 19 years of age, there would, doubtless, be many vacancies in the business and official world. Applications of this character which make serious charges against a member of the profession should be made within a reasonable time after the offenses are alleged to have been committed. To wait for nearly 30 years and until nearly all of those who knew of the transactions have passed along before making complaint, is an injustice to both the profession and the member charged.

If we were to determine the question on the facts we would hesitate at this late day, in reliance upon a record filled with doubt and haze, to cast defendant outside the bar, and thereby deprive him of his means of earning a livelihood, and cover him and his family with sorrow and disgrace. Justice demands no such pitiless verdict and we should shrink from pronouncing it.

The order of the trial court is set aside. No costs will be allowed to either party.

CLARK and MOORE, JJ., concurred with BIRD, J.

WIEST, J. (*concurring*). I concur in the result on the ground that the order made by Judge Black lent validity to the original order of admission and as long

as such order stands defendant is protected thereby. Under the record I cannot accept the conclusions stated by Mr. Justice BIRD relative to defendant's course since his admission. I do not agree that lapse of time bars the court from disbarring an attorney admitted through fraud practiced upon the court.

Considering the fact that admission to the bar constitutes the one admitted an officer of the court, I am of the opinion that an application to revoke such admission for fraud and deceit, practiced to the extent of procuring the admission of one barred by law, is not limited in point of time and may be presented at any time when the facts come to light. It would be a reproach to the law to hold that fraud and deceit in obtaining the office of attorney at law offends for a period only.

I recognize reason in the holdings that when one is legally licensed as an attorney at law and thereafter it is claimed he has forfeited his right to continue to practice he is entitled to have investigation within a reasonable period, but in case he had no right at all to be admitted, and practiced fraud upon the court in order to secure his admission, such admission may be revoked whenever the fraud comes to light and the illegality thereof is discovered.

FELLOWS, C. J., and STEERE, J., concurred with WIEST, J. SHARPE, J., did not sit.

The late Justice STONE took no part in this decision.