### UNITED STATES *v.* COMERFORD.

*(District Court, W. D. Texas. November, 1885.)*

1. CRIMINAL LAW—DEPOSITING OBSCENE SEALED LETTER IN POST-OFFICE—REV. ST. § 3893.
   Depositing a letter containing obscene matter in a sealed envelope in the post-office is not an offense within the meaning of Rev. St. § 3893.

2. SAME—JURISDICTION—OFFENSE, WHEN COMPLETE—REV. ST. § 731.
   When a letter containing obscene matter is deposited in the post-office, the offense is complete, and the party violating the statute must be indicted and tried in the district where the letter was so deposited.

TURNER, J. The defendant is indicted for violating section 3893 of the Revised Statutes of the United States. So much of said section as is applicable to this case is as follows:

"Every obscene, lewd, or lascivious book, pamphlet, picture, paper, *writing*, print, or other *publication*, of an indecent character, * * * and every letter upon the envelope of which, or postal card upon which, indecent, lewd, obscene, or lascivious delineations, epithets, terms, or language may be written or printed, are hereby declared to be non-mailable matter, and shall not be conveyed in the mails, nor delivered from any post-office, nor by any letter carrier, and any person who shall knowingly deposit, or cause to be deposited, for mailing and delivery anything declared by this section to be non-mailable matter, and any person who shall knowingly take the same, or cause the same to be taken, from the mails, for the purpose of circulating or disposing of, or aiding in the circulation or disposition of, the same, shall be deemed guilty of a misdemeanor," etc.

The next section, viz., 3894, reads as follows:

"No letter or circular concerning lotteries, so-called gift concerts, or other similar enterprises, offering prizes; * * * and any person who shall knowingly deposit, or send anything to be conveyed by mail, in violation of this section, shall be punished," etc.

A motion to quash the indictment is made, and a suggestion that the court has no jurisdiction.

It is, for the sake of the argument, conceded that the letter referred to in the indictment comes within the definition of obscene; that the same was deposited in the mail in the state of New York. The indictment charges the defendant with having deposited said letter in the mails of the United States, in New York. The letter was

a sealed letter, and directed to a person who resides in the Western district of Texas, to-wit, "in El Paso, Texas," and the defendant came to Texas, and was arrested here. It is claimed by the district attorney that the offense charged is a continuing offense, and the defendant may be arrested and tried in the proper district in New York, or in this district; and that a sealed letter is within the meaning of the statute, and is embraced in the word "writing" in the second line of said section No. 3,893. This section was amended in July, A. D. 1876, and the word "writing" added to the section.

Where an offense is begun in one judicial circuit, and completed in another, it shall be deemed to have been committed in either, and may be tried in either. See section 731, Rev. St. This has been held not to apply to a libel published in another district. *In re Buell*, 3 Dill. 116. The analogy will hold good.

The depositing of any of the things inhibited constitutes an offense, and if we extend the word "writing" to a sealed letter, the act of depositing must be held to constitute the entire offense. It is not believed that a sealed letter comes within the definition of a "publication." Webster defines "publication" as the act of publishing or making known; notification to the public at large, either by words, writing, or printing; divulgation; * * * that which is published or made known; an act done in public." The writing, in order to come within the inhibition, must be a *publication*. A writing that is not sealed is exposed to public view as much as a printed circular; and it was to this class of *publications* the word "writing" in the statute was intended to refer. This view is strengthened by the fact that the statute declares that those articles which are *non-mailable* shall not be carried in the mail. Who can prevent a sealed letter from being conveyed in and by the mail? I think it clear that the statute was directed to those writings that were open to inspection by the postmasters, and not to sealed letters. The word "letter" is used in the statutes, but it refers only to letters upon the *envelope* of which the inhibited matters appear. This certainly implies that with reference to *letters* it embraced only such as had visible upon the envelope the inhibited publication. If congress had intended to embrace sealed letters, it would have used the term "letters" instead of the word "*writing*," which it is contended here embraces the term "letter." It is true that a private letter is a writing, but it is not a publication. Again, the very next section prohibits the depositing of *letters* or circulars concerning (illegal) lotteries, showing that a clear distinction was drawn between a writing and a letter, and showing that the term "letter" was used when and where intended; and it would be a forced construction to say that congress meant to include a letter in the word "writing." If, however, by what I regard as a forced construction, it may be held that a sealed letter technically comes within the inhibition, I should be averse to putting a citizen upon trial for an act about which there was such reasonable doubt as to whether the act

constituted an offense against the laws.    Judge DRUMMOND, however, holds that the statute embraces sealed letters, and but for his opinion I should not hesitate a minute.    But he has failed to convince my judgment.

We have been taught to believe that it was the greatest injustice towards the common people of old Rome when the laws they were commanded to obey, under Caligula, were written in small characters, and hung upon high pillars, thus more effectually to ensnare the people.    How much advantage may we justly claim over the old Roman, if our criminal laws are so obscurely written that one cannot tell when he is violating them?    If the rule contended for here is to be applied to the defendant, he will be put upon trial for an act which he could not by perusing the law have ascertained was an offense. My own sense of justice revolts at the idea.    It is not in keeping with the genius of our institutions, and I cannot give it my sanction. It may be well to consider the established rules for interpreting criminal statutes.    In the case of *U. S.* v. *Clayton*, 2 Dill. 228, the rule is well stated, and authorities cited in the case are contained in 12 Myers, Fed. Dec. 86, § 345.    Section 346 reads as follows:

"The principle that the legislative intent is to be found, if possible, in the enactment itself, and that the statutes are not to be extended by construction to cases not fairly and clearly embraced in their terms, is one of great importance to the citizen.    The courts have no power to create offenses, but if, by a latitudinarian construction, they construe cases not provided for to be within legislative enactments, it is manifest that the safety and liberty of the citizen are put in peril, and that the legislative domain has been invaded. Of course, an enactment is not to be frittered away by forced constructions, by metaphysical niceties, or mere verbal and sharp criticism; nevertheless the doctrine is fundamental in English and American law that there can be no constructive offenses; that before a man can be punished his case must be plainly and unmistakably within the statute; and if there be any fair doubt whether the statute embraces it, that doubt is to be resolved in favor of the accused.    These principles admit of no dispute, and have often been declared by the highest courts, and by no tribunal more clearly than the supreme court of the United States."    Cases cited, *U. S.* v. *Morris*, 14 Pet. 464; *U. S.* v. *Wiltberger*, 5 Wheat. 76; *Ferett* v. *Atwill*,1 Blatchf. 151–156; *Myers* v. *Foster*, 6 Cow. 567; *Daggett* v. *State*, 4 Conn. 61.

Tested by this rule of interpretation, I do not believe that the word "writing" should be construed to mean or to embrace a sealed letter. The question is not presented here for the first time, as I have stated. See *U. S.* v. *Williams*, 3 Fed. Rep. 484; *U. S.* v. *Loftis*, 12 Fed. Rep. 671.

These two cases confirm my views upon the question presented. I am referred to the decision of Judge DRUMMOND in *U. S.* v. *Gaylord*, 17 Fed. Rep. 438.    In the case of *U. S.* v. *Britton*, 17 Fed. Rep. 731, the commissioner follows the rulings of Judge DRUMMOND; and in *U. S.* v. *Morris*, 18 Fed. Rep. 900, the judge (DEADY) simply yields his better judgment to what he believes a binding decision upon him, which is contrary to his opinion in the *Loftis Case*.    In short,

in the last cited cases deference is paid to the decision in the *Gaylord Case.* I cannot yield my assent to the same. I do not think the offense a continuing offense. If so, a man may be taken from Maine to California to be tried for a misdemeanor. Nor that the word "writing," in the statute, embraces or was intended to embrace a sealed letter. The indictment is quashed, and the defendant discharged.