## IN RE CARL LENTZ, AN ATTORNEY-AT-LAW.

Argued February 26, 1900—Decided June 11, 1900.

It appears that eight or nine years ago Carl Lentz, an attorney of this court, wrongfully appropriated to his own use moneys entrusted to him by his client for other purposes; that such misappropriation was made without any actual intent to defraud, and with the expectation of paying the moneys over as soon as required; that he had paid over principal and interest, not indeed as soon as required, but before the rule in this matter was applied for, and that since the misappropriation he has conducted himself with integrity in private and public life and in an important state office. *Held,* that the circumstances do not warrant the conclusion that Mr. Lentz is now unworthy of the confidence of clients, and therefore do not require the court to strike him off the roll of attorneys or to suspend him from the practice of his profession.

---

On rule to show cause why Carl Lentz should not be disbarred or suspended from his profession.

Before Justices DIXON, LUDLOW and COLLINS.

For the rule, *Samuel H. Grey,* attorney-general.

*Contra. Samuel Kalisch* and *Cortlandt Parker.*

The opinion of the court was delivered by

DIXON, J. On October 9th, 1899, a rule was entered requiring Carl Lentz, an attorney and counsellor of this court,. to show cause why he should not be disbarred or suspended · from the practice of his profession, because of his unprofessional conduct with respect to certain matters charged in the rule. The attorney-general was appointed to prosecute the rule, and it was ordered that proofs should be taken concerning the charges. This rule is now brought for final determination on the evidence submitted.

The first charge is that, in January, 1893, Henry E. Muller made an assignment for the benefit of his creditors to Mr. Lentz; that the latter, as assignee, collected $4,607.90 to be distributed among the creditors, out of which allowances were made to the amount of $2,905.19, thus leaving $1,702.71 for distribution, and that Mr. Lentz, disregarding his duty, retained that sum for a long time, until April, 1897, and fraudulently applied and appropriated the same to his own use.

On this charge the proof is that Mr. Lentz collected only about $2,200; that out of this he paid to creditors about $800 before any order for distribution was made, and that he paid · the residue within three months after the making of such order. This delay appears to have resulted partly from neglect, under the press of other business, and partly from ignorance as to the address of creditors. There is no evidence that it was caused by misappropriation of the fund to his own use, but, on the contrary, the testimony is that he always had the money in bank ready for distribution.

This charge is unsupported.

The second charge is that, about December 17th, 1890, Mr. Lentz, as attorney of Ferdinand Mutter, received $3,032.08, to be applied by him in payment of a mortgage held by Emma S.

Pond upon a farm which Mutter, about that time, had sold, clear of encumbrance, to St. Peter's Catholic Church, and that Mr. Lentz fraudulently appropriated the money to his own use.

Respecting this charge the proof is that Mutter had made such a sale and received the whole purchase-money, agreeing to pay off the mortgage, which bore only five per cent. interest; that, as the mortgagee did not then require payment, Mutter gave to Mr. Lentz $5,000, telling him either to invest it or to retain it as a loan to himself, at six per cent. interest; that accordingly Mr. Lentz invested $2,000 and retained $3,000, paying therefor interest at six per cent. until 1897, when he repaid the principal. It appears that Mr. Lentz had no knowledge of the terms under which Mutter had sold the farm, and that his only relation to the Pond mortgage was that, by Mutter's directions, he used the interest, due from himself, to pay the interest due to Miss Pond, paying the remaining one per cent. to Mutter.

This charge also is unfounded.

The third charge, which relates to Mr. Lentz's dealings with the money of Catherine Ost, his client, was formally withdrawn by the attorney-general at the argument, because of its groundlessness.

The fourth and fifth charges may be considered together.

They allege that Mr. Lentz, as attorney for John Ruckelshaus, about October 16th, 1888, received $1,523.57, to be paid to Mary Oehme, upon her signing a release discharging Charles M. Kase, the administrator of the estate of Hugh H. McCulloch, from all claims against the estate; that he failed to pay the money to Mrs. Oehme, but applied and appropriated the same to his own use; and that, about February 15th, 1891, he received from Ruckelshaus $1,300, to be used by him in paying off a judgment recovered by Charles Borcherling, as administrator of Mary Oehme, against Ruckelshaus; and soon afterwards obtained $1,200 from Ruckelshaus, upon the pretense that he could probably secure a final settlement of the matters in difference between said administrator and Ruckelshaus; but that Mr. Lentz wholly failed to apply the said

moneys to the purposes above mentioned, and wrongfully applied and appropriated them to his own use.

The proof is that Mr. Lentz, as attorney for John Ruckelshaus, did, at the times above stated, receive said sums of money for the purposes indicated; that of the $1,300 he used $1,122.90 in paying off the Borcherling judgment; that he tried to secure the release desired from Mrs. Oehme and to effect a final settlement with Mr. Borcherling, as her administrator, but could not succeed, and that thereupon he appropriated the money remaining in his hands to his own use. The moneys thus appropriated were not demanded from him until July, 1897, and were repaid by him, with interest, in installments, beginning in November, 1897, and completed in February, 1899.

This misappropriation of funds entrusted to Mr. Lentz in his professional capacity cannot be defended, but there were palliative circumstances. We are satisfied that Mr. Lentz had no fraudulent purpose; that the slow progress of the efforts made to secure the settlement desired, and the quiescence of his client, led him to believe that it would not be necessary for him to pay over the moneys in hand very soon, and that when the necessity should arise he would be able to obtain again the funds required. He also had a claim against his client for services, which, in February, 1899, was allowed, for $675, and paid.

This, therefore, is the case before us: that upwards of eight years ago Mr. Lentz wrongly appropriated to his own use about $2,900 of money belonging to his client; that such misuse was made without any actual intent to defraud, and with the purpose and expectation of repaying it when demanded; that the debt, principal and interest, was fully paid before the present proceeding was instituted, so that the client has suffered no loss, and refuses to take part in any complaint against his attorney.

Mr. Lentz has been a member of the bar, practicing in Newark, for about twenty-seven years; during a large part of that time he has been very actively engaged in public affairs in the county of Essex; and during several years last past has

been an efficient member of the state board of taxation. Throughout his career no other instance of misconduct than that above stated appears against him. What, then, should be the determination of the court on the present rule?

In exercising summary jurisdiction over attorneys, as distinct from other persons, courts have in view two leading objects: one, to compel the attorney to deal fairly and honestly with his client (*Strong* v. *Mundy, 7 Dick. Ch. Rep.* 833) ; the other, to remove from the profession a person whose misconduct has proved him unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney. *Ex parte Brounsall, Cowp.* 829 ; *Stephens* v. *Hill,* 10 *Mees. & W.* 28. In the attainment of these objects the idea of punishment has no appropriate place.

With regard to Mr. Lentz, there is no occasion for the exertion of the court's authority to constrain him to do justice to his client; he has already done so. There remains only the question whether his misbehavior has been such as to prove him now unworthy of confidence as a member of the bar.

The consequences of striking an attorney from the roll are so severe, both in degrading him in the eyes of the community and in depriving him of the means of living to which he may have devoted most of his mature life, that courts have taken that step only when the misconduct of the attorney might properly be characterized as gross. Thus, in *Tidd Pr.* 60, it is said: "If an attorney's misconduct has been very gross * * * the court will order him to be struck off the roll." So, in 1 *Chit. Arch. Pr.* 117: "The court will * * * strike an attorney off the roll * * * for gross misconduct." Likewise, in *Ex parte Wall,* 107 *U. S.* 265, Mr. Justice Bradley said: "It is laid down in all the books in which the subject is treated that a court has power * * * in gross cases of misconduct, to strike the names of attorneys from the roll."

I have stated the circumstances which tended to mitigate Mr. Lentz's delinquency; perhaps they are sufficient to remove his fault from the category of "gross misconduct;" but if they be not, still, bearing in mind that this appears as a single offence in a long professional career, that since it was

committed he has, for eight years, maintained a good character for integrity in private and in public station, and that he has made full restitution for the money wrongly used, we think the court would not be justified in declaring that he is now unworthy of the confidence of clients, and therefore should be struck from the roll of attorneys or suspended from the practice of his profession.

Our conclusion is that the rule against him should be discharged.