THE PEOPLE *ex rel.* Charles S. Deneen, State's Attorney,

*v.*

WILLARD C. SMITH.

*Opinion filed December 16, 1902—Rehearing denied February 6, 1903.*

1. ATTORNEYS AT LAW—*bad moral character is ground for disbarment.* By statute and the rules of the Supreme Court it is made a prerequisite to admission to the bar that the applicant shall possess a good moral character, and if it is shown that an attorney has ceased to possess such a character it is ground for disbarment.

2. SAME—*advertising to aid in procuring divorces is ground for disbarment.* An attorney who advertises himself in a newspaper as a "loyal, wealthy attorney," who "guarantees family freedom in month; no advance costs; witnesses quietly volunteered," is guilty of a criminal offense under the act to punish advertising for divorce business, and is subject to disbarment.

INFORMATION for disbarment.

CHARLES S. DENEEN, State's Attorney, (WILLARD M. McEWEN, FRANK B. PEASE, DAVID S. GEER, and JOHN T. RICHARDS, of counsel,) for petitioner.

WILLARD C. SMITH, *pro se.*

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On February 9, 1886, the respondent, Willard C. Smith, was admitted by this court to practice as an attorney at law. A license was issued to him and his name was placed on the roll of attorneys. Since his admission he has been engaged in the practice of law in Cook county. By leave of court the information in this case against

him was filed by the State's attorney of Cook county, and a rule was entered requiring him to show cause why his name should not be stricken from the roll of attorneys. He appeared and a stipulation was entered into by which the case was submitted for decision. By this stipulation respondent admitted the truth of the charge set out in the information, that on August 10, 1902, he inserted in the *Chicago Tribune*, a newspaper published in Chicago, and of general circulation throughout said city and a large number of States of the United States, the following advertisement: "Loyal, wealthy atty. guarantees family freedom in month; no advance costs; witnesses quietly volunteered.—K. 333, Tribune office." Another charge contained in the information was waived and withdrawn by the State's attorney. It was further stipulated that prior to the happening of the transaction alleged in the information the conduct of respondent as a practicing attorney had never been brought in question.

The meaning of this advertisement, as it was intended to be understood by the public to which it was addressed, is perfectly clear. It represented that respondent was loyal and wealthy; that he guaranteed family freedom in one month; that no advance costs would be required, and that he would quietly furnish witnesses to secure the desired result. The guaranty of family freedom referred to the marital relation, and respondent proposed to insure that which would frequently be impossible by the use of honorable and lawful methods. Family freedom could mean nothing else than freedom from family ties, and the suggestion from respondent that the reference might have been to some other relation, such as the deprivation of personal and property rights or duress of minors, is not reasonable. The public, whose business was solicited, would not understand it in that way. It was an advertisement to aid in procuring divorces, and its publication by respondent was a criminal offense under the provisions of "An act to punish the offense of ad-

vertising for divorces." (Hurd's Stat. 1901, p. 681.) The disreputable character of the proposal to act as attorney and furnish the necessary evidence by quietly volunteering witnesses is beyond question, and the attempts of respondent to explain this and other features of the advertisement consistently with his duty as an attorney to his client and the courts are wholly unsuccessful. It seems useless to enlarge upon the meaning or nature of the advertisement. The respondent either intended to mislead and deceive clients, or to do what he proposed by the advertisement.

By statute and the rules of court it is made a prerequisite of admission to the bar that the applicant shall possess a good moral character, and if it is shown that he has ceased to possess such a character it is good ground for disbarment. "Any conduct on the part of the attorney evidencing his unfitness for the confidence and trust which attend the relation of attorney and client and the practice of the law before the courts, or showing such a lack of personal honesty of or good moral character as to render the same unworthy of public confidence, constitutes good ground for disbarment." (3 Am. & Eng. Ency. of Law,—2d ed.—302.) "As a good character is an essential qualification for admission to practice, he may be removed whenever he ceases to possess such a character." (4 Cyc. 906.) It was agreed by the stipulation that the professional character of respondent had never been brought into question prior to this charge. That fact would be important and relevant to the question of the truth or falsity of the charge, but it is admitted by respondent that the charge is true.

We are of the opinion that the admitted facts clearly show such a lack of good moral character and such unfitness for the practice of law that the rule must be made absolute, and it is done accordingly.

*Rule made absolute.*