(April 2, 1921.)

## In re CHARLES CLIFTON.

[196 Pac. 670.]

ATTORNEY—DISBARMENT—VIOLATION OF LAW—VIOLATION OF OATH— VIOLATION OF DUTY—UNPATRIOTIC CONDUCT.

Acts committed and opinions expressed by an attorney of this court, during the war, which were not in accord with the standard of patriotism set by the Bar Association and observed by the average citizen and member of the profession, but which nevertheless did not amount to treason, nor to a violation of the espionage law then in force, or of any federal or state statute, nor to a violation of the oath and duties of an attorney, as prescribed by the statutes and the decisions and rules of this court, do not constitute legal ground for disbarment or suspension.

Original proceedings for disbarment. *Petition denied.*

Frank Martin, Raymond L. Givens, Elbert S. Delana, Dana E. Brinck, Karl Paine and J. T. Pence, for Petitioners.

"Although it is well settled that the legislature may provide that certain acts or conduct shall require a disbarment, the accepted doctrine is that statutes and rules

Authorities discussing the question of disloyal acts or political opinions as ground for disbarment of attorney are collated in a note in 8 A. L. R. 1262.

merely regulate the power to disbar instead of creating it, and that such statutes do not restrict the general powers of the court over attorneys, who are its officers, and that they may be removed for other than statutory grounds." (6 C. J. 584.)

The legislature, being only co-ordinate with the judiciary, cannot deprive the courts of their inherent power to dispose of such cases as the circumstances require. (*State v. Raynolds,* 22 N. M. 1, 158 Pac. 413; *In re Simpson,* 9 N. D. 379, 83 N. W. 541; 6 C. J. 581.)

The court has such inherent power. (6 C. J. 580; *People v. Harris,* 273 Ill. 413, 112 N. E. 978; *Chreste v. Commonwealth,* 171 Ky. 77, 186 S. W. 919; *In re Hilton,* 48 Utah, 172, Ann. Cas. 1918A, 271, 158 Pac. 691; *People v. Irwin,* 60 Colo. 177, 152 Pac. 905; *Wernimont v. State,* 101 Ark. 210, Ann. Cas. 1913B, 1156, 142 S. W. 194.)

The court may exercise its power in such regard in cases of professional misconduct generally; which misconduct may consist "in fact in any conduct which tends to bring reproach upon the legal profession or to alienate the favorable opinion which the public should entertain concerning it." (6 C. J. 589.)

In the case at bar the court may proceed both under its inherent power and under the statute as well. The first duty of an attorney is "to support the constitution and laws of the United States and of this state" (sec. 6572, C. S.), and this duty is incorporated in his oath; and any violation of his oath is a statutory ground for disbarment. (C. S., sec. 6578, subd. 2.)

At the time of the Civil War, disloyalty was recognized as a ground for disbarment. (*Cohen v. Wright,* 22 Cal. 293).

E. J. Dockery, appointed by the Court to appear for Respondent.

Many courts hold that common-law right of control over attorneys cannot be abridged by legislation. However, many

courts of the country hold to the contrary. (*In re Collins,* 147 Cal. 8, 13, 81 Pac. ?20; *Kane v. Haywood,* 66 N. C. 1.)

The universal attitude of courts is that an attorney will not be disbarred, unless the charges against him be of serious nature, and even defined as gross, and that such charges must be proven beyond question. (*In re Schnitzer,* 33 Nev. 581, 112 Pac. 848, 33 L. R. A., N. S., 941; *In re Lentz,* 65 N. J. L. 134, 46 Atl. 761, 50 L. R. A. 415; *In re Eaton,* 4 N. D. 514, 62 N. W. 597; *In re Snow,* 27 Utah, 265, 75 Pac. 741; dissenting opinion of Justice Field in *Ex parte Wall,* 107 U. S. 265, 318, 2 Sup. Ct. 569, 27 L. ed. 552, see, also, Rose's U. S. Notes; 6 C. J. 581, par. 37; *In re Haymond,* 121 Cal. 385, 53 Pac. 899.)

McCARTHY, J.—A petition asking for the disbarment of the respondent was filed in this court by a committee of the Ada County Bar Association and the matter was referred to Judge Davis, of the third district, as referee to take the testimony, make findings and report to this court. This court did not pass upon the question whether the petition stated grounds for disbarment. The material facts found are the following: Respondent Clifton was a member of the bar of Ada county, Idaho, and aware that the President of the United States and the state and county bar associations had called upon the lawyers to assist in the preparation of questionnaires free of charge. In December, 1917, he charged three registrants $1.50 each for services rendered in the preparation of questionnaires. In June, 1917, he stated to two Red Cross solicitors that he was opposed to the selective draft and the war and would do nothing to aid in its prosecution, that he would not subscribe to or aid any person or any enterprise that had for its object the promotion of the selective service draft, nor would he aid or assist any of the war activities or enterprises or subscribe to the Red Cross or any other fund that had to do with the recognition of the war, directly or indirectly. About November 20, 1917, in conversation with one R. L. Hale, he criticised the government with refer-

ence to the war, stating among other things that the Imperial German government was justified in sinking the "Lusitania," that we had no right to draft men, that he would not assist the government of the United States in any way, neither would he buy Liberty bonds. He refused to subscribe for Liberty bonds or war savings stamps, or contribute to the Red Cross or Y. M. C. A. or any other organization participating in the war work, except that he offered to donate $5 toward paying the expenses of assisting registrants immediately following the publication in the newspaper of the fact that he had charged for assisting registrants.

C. S., sec. 6578, subdivisions 1 and 2, read as follows:

"An attorney and counselor may be removed or suspended by the supreme court and by the district courts for either of the following causes, arising after his admission to practice:

"1. His conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction is conclusive evidence.

"2. Wilful disobedience or violation of an order of the court, requiring him to do or forbear an act connected with or in course of his profession, and any violation of the oath taken by him or his duties as such attorney and counselor."

Referring first to subdivision 1, the defendant has not been convicted of a felony or misdemeanor involving moral turpitude. By many authorities it is held that commission of a crime not connected with his professional duties is not ground for disbarring an attorney unless he has been convicted. (*In re Baum,* 32 Ida. 676, at 684, 186 Pac. 927.) There is authority to the contrary, holding that the commission of the crime is sufficient and the court has inherent power to act even though there has not been a conviction. (*Ex parte Wall,* 107 U. S. 265, 306, 2 Sup. Ct. 569, 27 L. ed. 552, see, also, Rose's U. S. Notes.) The views in *In re Baum, supra,* are not the established law in this state, because one justice dissented and the justice who

concurred did so only in the conclusion. We do not find it necessary to pass upon this point, because whatever may be their moral obliquity, the acts found by the referee were not a criminal offense under the existing statutes of the United States or this state or the common law.

It is not and cannot be contended that the defendant was guilty of treason as defined by the federal constitution and statutes, nor that he violated the espionage law then in force. (U. S. Stats. L., vol. 40, part 1, p. 217.) The more drastic espionage statute was not passed until May, 1918, several months subsequent to the acts and statements of the respondent as found by the referee. We have not been referred to any federal or state statute which he violated and we know of none.

Referring to subdivision 2 of C. S., sec. 6578, the question arises: "Did the defendant violate the oath or duties of an attorney?" The oath is as follows:

"I, ——, do solemnly swear that I am not a disbeliever in or opposed to all organized government, or a member of or affiliated with any organization entertaining and teaching such disbelief in or opposition to all organized government; or an advocate or a teacher of the duty, necessity or propriety of the unlawful assaulting or killing of any officer or officers, either of specific individuals or of officers generally, of the government of the United States or of any other organized government, because of his or their official character; that I will support the constitution and laws of the United States and of this state; that I will maintain the respect due to courts of justice and to judicial officers; that I will be true to the court and to my clients; that I will abstain from all offensive personalities, and that I will never reject for any consideration personal to myself, the cause of the defenseless or oppressed. So help me God."

The duties of an attorney are defined by statute as follows:

"C. S. 6572. Duties of Attorneys. It is the duty of an attorney and counselor:

"1. To support the constitution and laws of the United States and of this state.

"2. To maintain the respect due to the courts of justice and judicial officers.

"3. To counsel or maintain such actions, proceedings or defenses only as appear to him legal or just, except the defense of a person charged with a public offense.

"4. To employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the judges by an artifice or false statement of fact or law.

"5. To maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his client.

"6. To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged.

"7. Not to encourage either the commencement or the continuance of an action or proceeding from any motive of passion or interest.

"8. Never to reject for any consideration personal to himself the cause of the defenseless or the oppressed."

The only clause of the oath and section of the statute which are claimed to be material in this case are those which deal with the duty of an attorney to support the constitution and laws of the United States and of this state. We need not concern ourselves with the question as to whether the court has inherent power to require attorneys to perform other duties than those enjoined by statute, because, for the purposes of this case, the provisions of section 6572 are as broad as any requirements which might be prescribed by the court in the exercise of inherent power. It has been suggested that the respondent violated his duty in that he failed to support the constitution and laws of the United States. It is difficult to define just what is meant by the duty to support the constitution and laws of the United States. We conclude it means the duty to obey the existing laws of the land under our constitu-

tional form of government. It was the moral duty of members of the bar to assist the registrants free of charge. The proclamation of the President did not make this a legal duty. It simply called attention to and made more impressive the moral duty which already existed. In charging registrants the defendant violated no law of the land and no provision of the constitution, no decision or rule of this court. His statements in regard to the war and the various patriotic enterprises which were being carried on in aid of its prosecution did not constitute any violation of law existing at that time. The highest form of patriotism is not defined, and cannot be enforced, by. law; it has its rise in the higher realm of inspiration. Measured by moral standards, the conduct of defendant was reprehensible. His refusal to perform the moral duties which were rightfully expected of all members of the bar during the war justifies criticism and condemnation by the members of that profession and by all patriotic citizens. In this we join. Yet his absolute duty and our power must be measured not by our conception of the right degree of public spirit, but by the law. We appreciate the feelings and motives of the bar and the committee who have so ably presented this matter. Nevertheless we cannot exceed our legal powers, simply because we strongly disapprove of the respondent's conduct. We cannot put ourselves above the law, nor fail to bear in mind that "ours is a government of laws and not of men."

In *In re Arctander*, 110 Wash. 296, 188 Pac. 380, the supreme court of Washington disbarred an attorney for charging registrants for services rendered in making out their questionnaires and assisting them in the preparation of affidavits to withdraw their intention to become citizens, in order to escape military service. The Washington legislature had enacted into law the code of ethics of the American Bar Association as the standard of ethics for members of the bar of that state. The court held that such acts were a violation of the legal duty of an attorney as prescribed by canon 32 of that code. The decision must rest

upon that ground. As we have no similar statute in this state, the decision is not in point.

In *In re Wiltsie,* 109 Wash. 261, 186 Pac. 848, the same court held that an attorney should be disbarred for soliciting the business of preparing questionnaires and claims of exemption and filing false claims of exemption. On the latter ground the decision would be upheld without any statute; on the former ground it can be upheld only by virtue of the Washington statute giving the canons of ethics the force of law. In this case the court intimates that merely charging fees for such services would not of itself be ground for disbarment.

In *Cohen v. Wright,* 22 Cal. 293, the supreme court of California disbarred an attorney who refused to take the oath of allegiance. The statutes of California required attorneys to file affidavits of allegiance to the government. The attorney was disbarred because he refused to comply with this law. The ground of the decision was thus, not that he was guilty of unpatriotic or disloyal conduct in the abstract sense, but that he refused to perform a duty enjoined upon him by a valid statute. The decision is, therefore, not in point.

In *In re Margolis* (Pa. St.), 112 Atl. 478, the supreme court of Pennsylvania disbarred the respondent on the ground that he incited others by his addresses to violate the laws of the land, participated in an attempt to obstruct the draft act, and thus violated his oath and duty as an attorney. The court said, however:

"With beliefs and opinions of Mr. Margolis the courts have nothing to do unless his expressions thereof were uttered under circumstances and in a manner calculated to lead others to violate and disregard existing laws."

In *In re O'Reilly,* 188 App. Div. 970, 176 N. Y. Supp. 781, the appellate division of the supreme court of New York suspended respondent from practice because, while an associate member of the legal advisory board in the administration of the selective draft act, he charged a fee for services rendered in an attempt to secure the reclassifi-

cation of a person under the selective draft law. The court said that the charge for which he was suspended was charging a fee for work that was in line of his official duties and stated that the services would have justified some charge by an ordinary attorney. As the respondent Clifton was not a member of the legal advisory board, this decision would seem not to be in point.

There are decisions in which it is held that continued existence of a good moral character is a condition to the continuance of the right to practice law just as the existence of such character is a condition precedent to admission. (*People v. Smith,* 200 Ill. 442, 93 Am. St. 206, 66 N. E. 27.) In such cases, however, it will generally be found that the attorney has committed some act involving professional dishonesty in the usual sense of the term.

There are two recent decisions in which it is intimated that the court has the power to disbar an attorney for an act which is not unlawful or dishonest *per se,* simply on the ground that it is denounced as unprofessional and improper by the canons of ethics of a bar association. (*In re Schwarz,* 175 App. Div. 335, 161 N. Y. Supp. 1079; *People v. Berezniak,* 292 Ill. 305, 127 N. E. 36.) In both cases the complaint was improper advertising. Extended advertising of a commercial nature might be held to come within the principle of our statute and the common law which forbids an attorney to encourage litigation from personal motives. But it would be going too far to hold that one may be disbarred solely because he has failed to live up to the ideals which the canons of ethics of a bar association set for its members as attorneys and citizens. In other cases the courts do not attempt to give standards of ethics adopted by individuals or private organizations the force of law. There does not seem to be any sound reason to depart from this general rule in disbarment cases. The general tone of the profession has been greatly improved by the educational work of the bar associations. But it does not seem in accordance with the theory of our government to give to a private code of ethics the force of public

law.  It is well to bear in mind the admonition contained in an early Pennsylvania case.: ''To subject the members of the profession to removal at the pleasure of the court would leave them too small a share of the independence necessary to the duties they are called to perform to their clients and to the public.'' (*Case of Austin,* 5 Rawle (Pa.), 191, at 203, 28 Am. Dec. 657.)

As the acts committed and statements expressed by the respondent, while not in accord with the standard of patriotism set by the bar association and observed by the average citizen and member of the profession, nevertheless did not amount to treason, nor to a violation of the espionage law then in force, or of any federal or state statute, nor to a violation of the oath and duties of an attorney, as prescribed by the statutes and the existing decisions and rules of this court, we conclude that no legal cause for his disbarment or suspension is made, and it is the judgment of this court that the petition be denied.

Rice, C. J., and Budge, Dunn and Lee, JJ., concur.