(No. 4808A.  May 1, 1928.)

In re EDWARD R. DAMPIER.

[267 Pac. 452.]

Bissell & Bird, for Petitioner and Appellant.

Homer C. Mills, *Amicus Curiae.*

O. W. Worthwine and Oliver O. Haga, Prosecuting Committee of Idaho State Bar.

WM. E. LEE, C. J.—This is a proceeding by Edward R. Dampier, under sec. 8, chap. 211, Laws of 1923, to review a "judgment" of the board of commissioners of the Idaho state bar, by which it was "ordered and adjudged" that he be disbarred from practicing law. The complaint, on which disbarment was ordered, charged that Dampier was indicted, tried and convicted in the United States district court for this state of "sending obscene and non-mailable matter" through the United States mail, in violation of sec. 211, as amended, of the Penal Code of the United States, and paid a fine of one thousand dollars and served six months in the Minidoka county jail.

It is contended that the commission had no jurisdiction to make and enter judgment, in that no authority is conferred on the commission to disbar an attorney for any cause other than unprofessional conduct. The purpose of the law, expressed in sec. 1, chap. 211 of the ·1923 Sess. Laws, was to protect the public *against unprofessional, improper and unauthorized practice of law and unprofessional conduct of members of the bar.* Sec. 8 thereof empowers the board to formulate rules governing the conduct of all persons admitted to practice law and *to investigate and pass on all complaints that may be made concerning their unprofessional conduct.* The power of the commission extends no further than the investigation and determination of complaints concerning the unprofessional conduct of attorneys. The acts, constituting the crime for which petitioner was convicted, neither involved any matter in litigation nor concerned any duty to or relation with a client. They were wholly outside of and in no manner connected with the practice of law. Being so limited by law, the commission had no power to make and enter its judgment of disbarment.

This holding does not determine the ultimate question, for this court has heretofore taken the position, in

effect, that when a certified record of the conviction of an attorney of a felony or misdemeanor which may involve moral turpitude has been brought before it, it will take cognizance of such record, irrespective of the manner in which it is brought to its notice. (*In re Hofstede*, 31 Ida. 448, 173 Pac. 1087.) The matter, therefore, will be treated as a disbarment proceeding on a certificate of conviction.

█ The legislature has provided, in C. S., sec. 6578, certain grounds for suspending and disbarring attorneys. The one on which it is sought to disbar petitioner is subdivision 1 thereof:

"His conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction is conclusive evidence."

While crimes are divided generally into felonies and misdemeanors, subdivision 1 of C. S., sec. 6578, applies only to felonies and misdemeanors that involve moral turpitude. When an attorney is convicted of a felony or misdemeanor involving moral turpitude, the legislature has provided that a judgment of disbarment shall be entered. (C. S., sec. 6590.) For this reason, such a disbarment has been referred to as legislative in character, rather than judicial. (*In re Sanford*, 117 Kan. 750, 232 Pac. 1053; *In re Anderson*, 101 Kan. 759, 168 Pac. 868.)

When, in a court of this state, an attorney is convicted of a crime involving moral turpitude, it is made the duty of the clerk to transmit a certified copy of the record of conviction to the supreme court. The record of conviction is conclusive, but whether the offense of which he was convicted involved moral turpitude is for the determination of the court. The record before us comes from the federal district court of this state. Conclusive effect will be given the record of conviction, but it is not conclusive that the crime involved moral turpitude; that is a question of law for this court. It is necessary to determine, therefore, whether the character of the offense, as involving moral turpitude, is to be gauged by the laws of the United States or of this state. It is urged, however, that all felonies

involve moral turpitude; that petitioner was convicted of a crime, which is a felony under the laws of the United States, and that the conviction is conclusive that the offense is a crime involving moral turpitude under the laws of this state.

■ ■ The expression "moral turpitude" is susceptible of more than one interpretation. A crime might be held to involve moral turpitude, when gauged by the public morals of one community, and in another community the same offense would not be so considered. The supreme court of Pennsylvania, in *Beck v. Stitzel,* 21 Pa. 522, 524, said that "this element of moral turpitude is necessarily adaptive; for it is itself defined by the state of public morals, and thus far fits the action to be at all times accommodated to the common sense of the community." (*Ex parte Mason,* 29 Or. 18, 54 Am. St. 772, 43 Pac. 651; *Matter of Coffey,* 123 Cal. 522, 56 Pac. 448; *In re Kirby,* 10 S. D. 322, 73 N. W. 92, 97, 39 L. R. A. 856, 859; Newell on Slander & Libel, 78.) Moral turpitude has a more definite meaning in the statute law. Generally speaking, crimes *malum in se* involve moral turpitude. In *Bartos v. United States District Court,* 19 Fed. (2d) 722, the circuit court, reversing a judgment of a district court, disbarring an attorney, who had been convicted of manufacturing intoxicating liquor for his private use, said:

"But it (the trial court) seemed to give much weight to a line of cases, sporadic and unsound we think, which say that the phrase moral turpitude has no definite meaning, that it shifts and fluctuates in keeping with changes in the moral standards of a people or country. This is doubtless so when viewed solely as a question of morals and long periods of time are taken into consideration. But when private rights are being adjudicated they are determined by rules of the civil law, not the moral; and so the civil law fixes a definite meaning to the phrase—

"When this rule of the civil law as distinguished from the moral is ignored, the court, perhaps unconsciously, sets itself up to enforce what it conceives to be the rule of the

moral law, as to which it is without power, and as to which there must at all times be different notions by different judges what that law is."

If we hold that the instant statute applies only to those felonies and misdemeanors which involve moral turpitude under the laws of this state, the term "moral turpitude" is given a definite meaning, for it must then be gauged by the statutes of this state.

Our statutes clearly define and classify felonies and misdemeanors, and, in providing that an attorney must be disbarred on conviction of a felony or misdemeanor involving moral turpitude and that the record of conviction shall be conclusive evidence thereof, there is no reason to suppose that such definition and classification was not within the contemplation of the legislature, and the fact that our classification and definition is not the same as that in other jurisdictions would seem to be a sufficient reason for holding that "a felony or misdemeanor involving moral turpitude" as used in the statute was intended to include only crimes involving moral turpitude under the laws of this state. (*People v. Camperlingo*, 69 Cal. App. 466, 231 Pac. 601.)

As stated by the supreme court of North Carolina in *State v. Ebbs*, 150 N. C. 44, 17 Ann. Cas. 592, 63 S. E. 190, 19 L. R. A., N. S., 892—

"What is felony also, in one country may not be felony in another, and it is competent for the legislature of every nation to attach disabilities to the commission of offenses which by the law of other nations may be wholly without such consequences. We know that the Federal government punishes practically all offenses with imprisonment in the penitentiary. Violations of the revenue laws, often technical and involving no moral turpitude whatever, may be so punished. Again, acts which in our state are deemed misdemeanors, punishable by fine or short term in the county jail or house of correction, are deemed of grave character and punished by imprisonment in the state's prison in

other states. Each state makes its Penal Code, and the Federal government does the same.''

Felonies and misdemeanors are classified differently by the statutes of the United States (sec. 10509, U. S. Comp. Stats.) than by the laws of this state (C. S., sec. 8084). The expressions "felonies" and "misdemeanors" having been used in the original disbarment act of this state (Pr. Act, 1864), and the same session of the territorial legislature having defined and classified felonies and misdemeanors as they are now defined and classified by C. S., sec. 8084, it is more reasonable to assume that the legislature had in mind and intended to include in the classification of offenses, for the conviction of which attorneys must be disbarred, felonies and misdemeanors involving moral turpitude as defined by the laws of this state, than that it meant to include the great variety of acts then and thereafter made offenses against the laws of other jurisdictions, irrespective of whether or not they involve moral turpitude under the laws of this state. Despite certain expressions contained in the opinion of this court in the case of *In re Kerl*, 32 Ida. 737, 8 A. L. R. 1259, 188 Pac. 40, we ascribe to the legislature an intent to fix a definite, rather than an indefinite, test or standard by which offending attorneys may be judged; that, in using the expression "conviction of a felony or misdemeanor involving moral turpitude," the legislature had in mind felonies and misdemeanors involving moral turpitude as defined by the statutes of this state, rather than according to the moral standards of other communities; that it meant felonies and misdemeanors involving moral turpitude within the meaning of the laws of this state rather than the laws of other jurisdictions. (*State v. Biggs*, 52 Or. 433, 97 Pac. 713; *State v. Prendergast*, 84 Or. 307, 164 Pac. 1178; *In re Comyns*, 132 Wash. 391, 232 Pac. 269; *State v. Riddle*, 213 Ala. 430, 105 So. 259; *State v. Ebbs, supra.*)

The fact, therefore, that petitioner was convicted of a violation of an act of Congress of sending letters through the mails, which were conceded to be nonmailable, that

he was convicted of a felony under the laws of the United States, is not conclusive that the conviction was of a felony or misdemeanor involving moral turpitude, within the purview of the first subdivision of C. S., sec. 6578. The offense against the laws of the United States, for which petitioner was convicted in the federal court, is not a crime *eo nomine* under the laws of this state.

■ ■ It is contended, however, that "the act of which accused was convicted is made a crime" by C. S., sec. 8303, which provides that—

"Every person who wilfully and lewdly either . . . .

"3. Writes, composes, stereotypes, prints, publishes, sells, distributes, keeps for sale, or exhibits, any obscene or indecent writing, paper or book . . . .

"Is guilty of a misdemeanor."

This section of our code was originally adopted in the Revised Statutes of 1887, sec. 6840, and was evidently enacted for the purpose of making statutory those offenses which were such at common law as against public morals. Similar statutes have been almost universally held to be limited to acts public in their nature, to publishing, distributing or exhibiting to the public or to more than one person, or at least that in publishing, exhibiting or distributing to one there was opportunity afforded for others of the public to see. (Bishop on Criminal Law, 9th ed., secs. 244, 500, 501, 761, 1129; Bishop on Statutory Crimes, secs. 298, 878; *Commonwealth v. Sharpless*, 2 Serg. & R. (Pa.) 91, 7 Am. Dec. 632.)

While it is not necessary that a conviction under a federal act find its exact counterpart *eo nomine* in the state law, it° is of controlling force to note that the present section 211 of the Criminal Code of the United States, originally U. S. R. C., sec. 3893, adopted in 1876, was distinctly held, until amended in 1888 (25 St. L., chap. 1039, sec. 2, p. 496), not applicable to private letters. (*United States v. Comerford*, 25 Fed. 902; *United States v. Huggett*, 40 Fed. 636; *United States v. Chase*, 135 U. S. 255, 10 Sup. Ct. 756, 34 L. ed. 117.) Its purpose was held to be to "refuse facilities for

the distribution of matter deemed injurious to the public morals.'' (*In re Jackson*, 96 U. S. 727.) The court, in *United States v. Huggett, supra*, in construing this act and refusing to follow other federal decisions which had held ''letters'' within the statute, prior to the amendment of 1888, though not named therein, said:

'' . . . . that until the recent acts of Congress, that body has never come up to the elevated plane of moral action suggested by these decisions, and to be implied from putting this restriction upon the absolute freedom of that form of correspondence, but has especially refused to do that thing. . . . . ''

Citing ample authority of the United States supreme court in support of its construction of the statute, the court further said:

''That court has undoubtedly enforced the rule of a strict though reasonable construction of penal statutes, confines them within the clearly expressed or necessarily implied meaning of the language used, and refuses to enlarge the words to include other conduct of like, equal, or greater atrocity, simply because it may be within the same mischief to be remedied, when it is not fairly included in the language of the act . . . . '' (pp. 637, 638).

It is said in *United States v. Sheldon*, 2 Wheat. (U. S.) 119, 4 L. ed. 199, that there is ''no good reason for construing a penal law by equity so as to extend it to cases not within the correct and ordinary meaning of the expression of the law,'' even though ''the mischief is the same.'' In *United States v. Reese*, 92 U. S. 214, at 221 (23 L. ed. 563), the court said:

''It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would to some extent substitute the judicial for the legislative department of the government. The courts enforce legislative will when ascertained, if within the constitu-

tional grant of power. Within its legislative sphere, Congress is supreme and beyond the control of the courts.''

This court is limited to the declaration of the intent of the legislature, and can neither legislate nor by construction of the statute ''enlarge the words to include other conduct of like, equal, or greater atrocity, simply because it may be within the same mischief to be remedied, when it is not fairly included in the language of the act.'' C. S., sec. 8303, is the only provision of our laws analogous to that under which conviction was had, and the legislature having included so many forms of written and printed matter and ''especially refused'' to include letters as a subject of the act, it would be judicial legislation directly contrary to the intent of the legislature and the decisions of the supreme court of the United States for us to declare letters within the act, and to declare to be a felony or misdemeanor involving moral turpitude that which the legislature has refused to designate as either.

When an attorney is convicted in the courts of this state of a felony or misdemeanor involving moral turpitude, he is deemed unworthy to practice that profession, and the record of conviction is conclusive evidence of his unfitness. Conceding that the same effect should be given a record of conviction, in another jurisdiction, of a crime which is a felony or misdemeanor involving moral turpitude under the laws of this state, since the offense of which petitioner was convicted is not a crime and does not involve moral turpitude under the laws of this state, it is not within that classification of offenses with respect to which the legislature has declared that the courts must give conclusive effect to the record of conviction, and petitioner cannot be disbarred solely because of the conviction.

The holding that Dampier should not be disbarred because of his conviction disposes of the case for the reason that the record of conviction is the sole ground on which disbarment is sought. Counsel argue, however, that this court has the inherent power to disbar an attorney when his misconduct is sufficiently grave to warrant such action; that the

attorney should be disbarred because of the nature of the acts constituting the crime of which he was convicted. Conceding, without deciding, that this court possesses the power to order the disbarment of an attorney in the absence of a specific accusation and notice, let us examine counsel's argument:

It is said that Dampier violated that portion of his oath as an attorney of this court that he would "support the constitution and laws of the United States. . . . . " The answer to this contention is found in the recent case of *In re Bartos, supra,* wherein it is said:

"As to the second ground—of course, all men should support and defend the Constitution, National and State, and the laws made pursuant thereto. But we do not conceive that the oath of an attorney imposes any additional obligation on him in that respect when he is acting in his private capacity. His profession necessarily gives him a better understanding of the organic law than others may have, but his oath is an official oath and it binds him only in his official action. When not so engaged he stands on the same plane as other citizens, no higher, no lower, no different in legal rights and obligations."

It is argued that Dampier sent obscene matter through the mails, that he committed an immoral act, for which he ought to be disbarred. The consequences of disbarring an attorney are so severe, in degrading him and in depriving him of the right to earn his living in the only way he is fitted, by practicing the profession for which he has trained himself and devoted his mature years, that the courts have generally taken the position that an attorney should be deprived of his right to practice his profession only when they can say that his conduct was so gross as to unfit him to practice law. (2 R. C. L. 1099, 1100; *In re Carl Lentz,* 65 N. J. L. 134, 46 Atl. 761, 50 L. R. A. 415; *People v. Smith,* 290 Ill. 241, 9 A. L. R. 183 and note, 202, 124 N. E. 807; *State v. Burkett,* 4 Ohio S. & C. P. Dec. 89; *Re H—— T——,* 2 Penny. (Pa) 84; *In re Elliot,* 73 Kan. 151, 84 Pac. 750; *In re Washington,* 82 Kan. 829, 109 Pac.

750; *Ex parte Wall,* 107 U. S. 265, 2 Sup. Ct. 569, 27 L. ed. 552; 6 C. J. 600; *In re Haymond,* 121 Cal. 385, 53 Pac. 899.)

It was held in New Jersey (*In re Carl Lentz, supra*), that:

"In exercising summary jurisdiction over attorneys, as distinct from other persons, courts have two leading objects: one to compel the attorney to deal fairly and honestly with his client (*Strong v. Mundy,* 52 N. J. Eq. 833, 31 Atl. 611) ; the other to remove from the profession a person whose misconduct has proved him unfit to be intrusted with the duties and responsibilities belonging to the office of an attorney. (*Ex parte Brounsall,* 2 Cowp. 829; *Stephens v. Hill,* 10 Mees. & W. 28.) In the attainment of these objects the idea of punishment has no appropriate place. . . . . "

It is stated in 6 C. J. 585, that:

"As good character is an essential qualification for the admission of an attorney to practice, he may be removed whenever he ceases to possess such a character. To warrant the removal however, the attorney's character must be bad in such respects as to show that he is unsafe and unfit to be trusted with the powers of an attorney."

In the Baum case, 32 Ida. 676, 186 Pac. 927, Mr. Justice Rice said:

"It is held by some courts that an attorney may be disbarred for criminal misconduct not committed in connection with his office as attorney. . . . . But in such cases the criminal misconduct should be such as to involve inherent dishonesty and of itself show one to be unworthy to hold the office of attorney."

In the Wourms case, 31 Ida. 291, 170 Pac. 919, this court said, in an opinion by Mr. Justice Morgan, that:

"The consequences visited upon an attorney by his disbarment, degrading him, as it does, in the estimation of his fellow-men and depriving him of the means of making a livelihood to which he should have, and probably has, devoted many years of arduous study and expensive preparation, are so severe that it should only be resorted to in cases

of necessity where there is no reasonable ground to believe the imposition of a judgment less severe will adequately protect the public, the courts and the profession. (2 R. C. L. 1086–1089.)''

And it is not out of place to state that the order disbarring Wourms, whose misconduct related to his profession, was set aside about eleven months later.

In the case of *In re Clifton*, 33 Ida. 614, 19 A. L. R. 931, 196 Pac. 670, Mr. Justice McCarthy said:

''There are decisions in which it is held that continued existence of a good moral character is a condition to the continuance of the right to practice law just as the existence of such character is a condition precedent to admission. (*People v. Smith*, 200 Ill. 422, 93 Am. St. 206, 66 N. E. 27.) In such cases, however, it will generally be found that the attorney has committed some act involving professional dishonesty in the usual sense of the term.''

It is safe to say that it is not required that an attorney be free from every vice, and that a single act of immorality, not affecting his professional integrity, is not sufficient to justify his disbarment.

'' . . . . It would be carrying the doctrine too far to hold, that an attorney must be free from every vice, and to strike him from the roll of attorneys because he may indulge in irregularities affecting to some extent his moral character, when such delinquencies do not affect his personal or professional integrity. . . . . '' (*State v. McClaugherty*, 33 W. Va. 250, 10 S. E. 407.)

Dampier has practiced law in this state since 1909, and never before has any charge been made in this court concerning his conduct. The misconduct for which he was convicted had no relation whatever to the duties of an attorney or to the practice of law. It is not suggested that he is not a lawyer of ability, that he is not honest, that he embezzled his clients' money or that he ever betrayed a trust. The sole ground on which we are urged to pronounce his disbarment is that, as a man, outside of his profession, he sent obscene letters through the mail. Dampier has been

punished for his misconduct, and, as said by Morgan, J., in the Wourms case, disbarment proceedings are not for the purpose of punishing the attorney, but to protect the public. Courts owe a duty to the lawyer as well as to the public, and they should be just as willing to refuse to disbar a lawyer when his conduct is not sufficiently grave to justify such severe action as to protect the public by an order of disbarment where it is justified by the lawyer's misconduct. While I neither attempt to condone nor palliate what Dampier did, it is my opinion, on mature reflection, that the admitted immorality does not render him unfit to be trusted with the duties and responsibilities of an attorney, and does not justify his disbarment.

Judgment for petitioner.

TAYLOR, J., Concurring in Part.—I concur in holding that the board had no power to make or enter its judgment of disbarment because the hearing was not upon a charge of unprofessional conduct; that "petitioner cannot be disbarred solely because of the conviction" for the reasons stated; and that this holding "disposes of the case for the reason that the record of conviction is the sole ground on which disbarment is sought"; and in the opinion thus far.

I do not concur in passing further upon the propriety of disbarring or not disbarring petitioner under the inherent power of the court. Even a proceeding under such inherent power should not be taken "until a formal charge has been preferred." (*In re Edwards*, 45 Ida. 676, 266 Pac. 665.) The question is not here.

I am authorized to say that Judge Varian concurs with me.

Givens, J., dissents.

BUDGE, J., Dissenting.—I concur in holding that the commissioners of the Idaho state bar had no authority to enter a judgment of disbarment. Such a final judgment, if entered, rests exclusively with the supreme court. In

my opinion, inherent power to disbar an attorney is vested, in a proper case, in the supreme court.

In *In re Kerl,* 32 Ida. 737, 188 Pac. 40, 8 L. R. A. 1, this court held, *inter alia,* that when an attorney, admitted to practice in this state, has been convicted of a crime involving moral turpitude and a certified copy of the record of his conviction has been filed in this court, his guilt or innocence of the crime charged is not in issue; the question is, has he been convicted of such offense. C. S., sec. 6578, makes the record of conviction conclusive evidence of that fact, and C. S., sec. 6590, prescribes the judgment which must be entered, said latter section reading in part as follows:

"Upon conviction, in cases arising under the first subdivision of section 6578, the judgment of the court must be that the name of the party must be stricken from the roll of attorneys and counselors of the court, and that he be precluded from practicing as such attorney or counselor in all courts of this state, . . . . "

Kerl was convicted, in the district court of the United States in and for the Omaha division of the district of Nebraska, of a violation of an act amending the Espionage Act, and was sentenced to pay a fine of $2,000. An accusation, accompanied by certified copies of the indictment, verdict and sentence was filed in this court, and it was charged that he had been convicted of a crime involving moral turpitude. A citation was thereupon issued directing Kerl to show cause, if any he had, why he should not be disbarred. A hearing was had upon the charge, and answer made thereto by Kerl. Under the provisions of C. S., secs. 6578 and 6590, judgment was entered disbarring Kerl, and his name was stricken from the roll of attorneys and counselors of this court and he was precluded from practicing as such attorney or counselor in all the courts of this state. The conviction, as in the instant case, was had in a United States district court, and the judgment of conviction was held to be conclusive. The question of whether or not the act or acts of the accused involved moral turpitude under the laws of this state was, as I read the decision, wholly

immaterial. The only question was whether or not Kerl had been convicted of an offense involving moral turpitude in the court in which he was tried, and proof of his conviction was conclusively established by a certified copy of the record of conviction in the federal district court filed in this court.

In *In re Hofstede*, 31 Ida. 448, 173 Pac. 1087, Hofstede had been convicted in the United States district court for the central division of the district of Idaho of a violation of the provisions of the selective service law of the United States in aiding another to avoid registration thereunder. A certified copy of the record of conviction was transmitted to this court. The crime of which Hofstede had been convicted, and which this court held to involve moral turpitude, was not a crime under the laws of this state but was a crime under the laws of the United States. I cannot agree, therefore, with the holding in the opinion of Chief Justice Lee in the instant case that the crime of which petitioner was convicted must be one involving moral turpitude as prescribed by the laws of this state. I am of the opinion that conviction of a felony or misdemeanor involving moral turpitude either under the laws of the United States or the laws of this state subjects the offending attorney to disbarment as provided in C. S., secs. 6578 and 6590.

Neither am I of the view that an attorney is not subject to disbarment for such acts and conduct criminal in their nature but not committed in the performance of professional duties. (See *In re Henry*, 15 Ida. 755, 99 Pac. 1054, 21 L. R. A., N. S., 207.)

No useful purpose would be served by a lengthy discussion or citation of numerous authorities to be found holding contrary to the views expressed in the opinion of Chief Justice Lee. As I view the situation, the well-considered decisions of *In re Kerl, supra*, and *In re Hofstede, supra*, have been overruled without sufficient reason and contrary to what I consider the weight of authority, and I cannot, therefore, bring myself to agree with the disposition made of this case.